M. F. GUETERSLOH, Emma Guetersloh, Chris D. Guetersloh, and Viola Guetersloh

v.

Ellis CAMPBELL, Jr., District Director of Internal Revenue.

Civ. No. 8378.

United States District Court
N. D. Texas,
Dallas Division.

April 29, 1960.

H. W. Strasburger, William S. Downard (of Strasburger, Price, Kelton, Miller and Martin), Dallas, Tex., for plaintiffs.

W. B. West, III, U. S. Atty., Ft. Worth, Tex., W. E. Smith, Asst. U. S. Atty., Dallas, Tex., for defendant.

DAVIDSON, District Judge.

The plaintiffs in this case, the taxpayers, bring an action to restrain the Revenue Agent and Collector of Internal Revenue, Ellis Campbell, from filing a deficiency showing which will tend to establish certain elements of a controversy and fix a lien which they claim would be to their great disadvantage and would result in an irreparable loss to them. They set forth their contention in substantially the following form which we find to be in line with the facts. They are ordinary farmers with little education but believe in the free enterprise system. They are ambitious and as a result spread themselves too thin with too short a string and had to go from pillar to post in handling their financial undertakings.

Even before the controversy arose they sought out the advice of a Deputy Collector of Internal Revenue as to the proper type of books to keep for income tax purposes. They kept books as instructed by this agent.

They marked down in their books every cent of income even the small 5, 10, 20 and 25¢ items. They did not put in their books loans they made from others or collection of credit items nor the large amount of funds transferred from one bank to another, and various and sundry similar items which did not represent income and have a bearing on calculating income taxes. Without any thought that over ten years later they would be required to pay taxes on all of said items of deposit as if they were pure income.

For a number of years, these books and records were examined, worked on and analyzed by various and sundry agents, and the taxpayers were led to believe if there were to be any additional taxes, they would be determined by the books and records. Thereafter for a number of years, the taxpayers were informed that if there were any additional taxes, they would be determined by the net worth theory, and the taxpayers, at the Government's special instance and request and at their expense, furnished the Government much data bearing on the net worth theory.

Finally, in 1958, long after their bank deposits for the years 1947–51 had passed beyond their memories, the agents informed the taxpayers, for the first time, that they were going to be taxed on the bank deposit method.

During the long period of many years brought about entirely by the Government's acts and omissions and over the protest of the taxpayers, the Government committed the unprecedented act of either losing or destroying some of the taxpayers' books and records. The Government admits losing the 1952 ledger which has an important bearing on the proposed assessment, and the taxpayers claim that they lost other portions of the records as well. And the Government, knowing that extensive cotton transactions had been had with Anderson, Clayton & Company, of Houston, went to the latter city and examined said company's books and records.

The Government agents admit that the taxpayer plaintiffs were at all times completely cooperative and frank, and that they were honest and trustworthy and that they never caught them in a lie or a misrepresentation.

Every deposit slip will be counted as pure income unless the taxpayer citizens can prove the contrary, and of course they cannot prove to the contrary because the Government had deprived them of any means of proof.

The evidence is undisputed to the effect that the taxpayer plaintiffs could not possibly pay the tax in question and sue for a refund because the proceeds of all of their properties would pay only a

small portion of the contemplated assessment of the Government on the bank deposit method.

In answer to the plaintiffs' contention the Government relies upon Section 7421 (a) of the Internal Revenue Code, 26 U. S.C.A. § 7421(a), which in effect forbids any action enjoining the collection of tax and insists that the plaintiffs' contention comes within such law and that this Court is without jurisdiction to hear or restrain such collection.

The plaintiffs reply in effect that if this Court has no jurisdiction to restrain such abuses, then certainly no one else has and that this Court is the only source to which the plaintiffs can look for relief.

Each of the thirteen colonies afer having ratified the Constitution sent in a suggested bill of rights. The Colony of North Carolina sent in one which contained among other things a declaration that to every man who had a grievance there should be a forum to which he could appeal for relief.

■ We feel that there should be a forum that could grant the relief sought by these plaintiffs and we do not feel and do not find the precedents deny this Court the use of its equity powers in correcting abuses if attempted under this statute. Where exceptional circumstances exist these equity powers may be invoked.

■ In the case of United States Mutual Benefit Association v. Welch, 6 Cir., 268 F.2d 201, 202, we find the announcement of the rule which we consider applicable:

"* * * Its restraint, however, is not absolute and an exception to its application is recognized in those cases which present extraordinary and exceptional circumstances requiring the intervention of a court of equity."

In treating the same subject we find again in Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 456, 66 L.Ed. 822, the following declaration:

"* * * this court in Dodge v. Brady, 240 U.S. 122, 126, 36 S.Ct.

277, 60 L.Ed. 560, (held) that (this section) of the Revised Statutes does not prevent an injunction in a case apparently within its terms in which some extraordinary and entirely exceptional circumstances make its provisions inapplicable."

Again, in the case of Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 263, 76 L.Ed. 422, the Court declares:

"* * * This court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax, there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. * * * It has never held the rule to be absolute, but has repeatedly indicated that extraordinary and exceptional circumstances render its provisions inapplicable."

■ We think the action of the defendant in this instance produces one of those exceptional cases which clearly invokes the exercise of equity powers. It may be briefly and concisely stated in few words, to wit: Assessing and determining the amount of the plaintiffs' income by their deposit slips in the bank places the assessment upon a basis which is impossible for the plaintiffs to make a successful defense or denial although they have had one.

Again, they cannot pay the tax and sue to recover it back in the ordinary process as is often and ordinarily done. By the use of the deposit method the Government has determined the tax due at such a large sum that the plaintiffs are wholly unable to raise money to pay the tax and then sue for its return. It can be readily seen how this large assessment occurred, since the plaintiffs were buying and selling land, since they operated for a time being the sale of farm equipment, since for another period they operated exclusively in the cotton business with Ander-

son, Clayton. The books they kept would show income and outgo. They would show losses and gains but no attempt was made and rarely is made to trace the elements of a check. It is a matter of common knowledge that one party will accept a check in which a third party has an interest. He will deposit that check and then pay over to the third party a portion of the money, but the portion that the third party got was in no sense income. If he collects interest on a loan and the loan is $500 and the interest is $30 and he deposits the check, only $30 of it is income whereas $500 of it is not income. But under the Government's plan of assessing taxes he must pay taxes on that which was only the collection of a debt.

The evidence indicates that in carrying on the cotton business they did plaintiffs would frequently receive checks from Anderson, Clayton which would indicate a disbursement of the proceeds thereof among other people so that the checks were not income but simply a method of adjusting business transactions.

It can hardly be insisted that where hundreds of checks pass through a man's hands that he can 5, 6 and 10 years afterwards tell what the checks were for in many, many instances.

We feel that the action of the Government in placing the tax determination upon a ground which deprives the taxpayer of any reasonable explanation or defense to much of the tax assessed is inequitable and unjust.

The evidence indicates that there was open to the Revenue Department all the desired information to assess this tax and arrive at it on the net worth basis which would not subject the plaintiffs to this harsh and inequitable arrangement.

Moreover, they kept a set of books in line with that which the Government officers suggested as being a correct method. These books are in the hands of the Revenue officers. Nobody questioned the accuracy of the books. The Government might have assessed its tax from the books or by the net worth system.

Believing that the plaintiffs will be without remedy from having to pay tax on large sums of money which were never income at any time by reason of the method adopted by the Revenue officers we feel that this is an exceptional case.

We will not enjoin the collection of the tax so as to prevent the Revenue officers from procuring or arriving at the amount of tax by either of the lawful methods and frequently used methods of net worth or by the books.

The Court's view of the case is much like that of a motion to suppress evidence. The Government just simply shouldn't use evidence which it knows that the plaintiffs may not be able to explain or refute or that in a course of ordinary dealings few men could.

It will be the order of the Court that the defendant, Honorable Ellis Campbell, be enjoined from using the deposit method of computing tax in this case.