Ellis CAMPBELL, Jr., District Director
of Internal Revenue, Appellant,

v.

M. F. GUETERSLOH, Emma Guetersloh,
Chris D. Guetersloh, and Viola
Guetersloh, Appellees.

No. 18531.

United States Court of Appeals
Fifth Circuit.

March 16, 1961.

Rehearing Denied April 25, 1961.

William A. Friedlander, Atty., Dept. of Justice, Washington, D. C., W. B. West, III, U. S. Atty., Fort Worth, Tex., Lee A. Jackson and Richard B. Buhrman, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., W. E. Smith, Asst. U. S. Atty., Dallas, Tex., A. F. Prescott, Atty., Dept. of Justice, Washington, D. C., for appellant.

William S. Downard, Henry W. Strasburger, Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., for appellees.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

The District Director of Internal Revenue appeals from what appears to be an unprecedented permanent injunction restraining him from using a particular method of computing an alleged deficiency in income taxes.

The taxpayers, two brothers and their wives, complained in their suit for injunction that the Director was threatening to issue a statutory notice of deficiency, commonly known as a 90-day letter asserting deficiencies in their income taxes for calendar years 1947–1951, and fraud penalties, based on "improper, illegal, oppressive, arbitrary, capricious and vicious acts of his agents," and that because of the particular circumstances of the long investigation they would be unable to make the proof necessary to rebut the presumption of correctness of such deficiency notice. The particular circumstances charged were primarily that over the years taxpayers had been advised that the investigation would be made upon more conventional lines, such as examination of the books and records or by using the net worth method or by considering specific items of receipts and expenditures; that only after memories had become hazy and records lost did the agents proceed to reconstruct taxpayers' income by the bank deposit method.

On a record that falls far short of supporting several of the findings of the trial court,[1] the court declined to enjoin the investigation completely or to enjoin the issuance of the 90-day letter. Instead, it enjoined the making of a deficiency determination by use of the method being pursued by the agents, i. e., that "known as the bank deposit and expenditure method whereby unidentifiable bank transactions would be the basis for a determination of additional income tax liability."

The real basis of the court's ruling was stated in its opinion which is found at 184 F.Supp. 392, 395:

---

[1] Because of the disposition we make of the case on legal grounds it is not necessary to pinpoint the deficiencies. However, it is plain that there was no basis for the court's finding that "nobody questioned the accuracy of the books," or that under the bank deposit method the taxpayers will be "required to pay taxes on all of said items as if they were pure income" or that the government "deprived [the taxpayers] of any means of proof." One ledger of one taxpayer for one year was lost while in the government's possession. No deficiency was proposed for that year (1952).

"The Court's view of the case is much like \* \* \* a motion to suppress evidence. The Government just simply shouldn't use evidence which it knows that the plaintiffs may not be able to explain or refute or that in a course of ordinary dealings few men could."

It was undisputed that the tax returns for the years in issue conformed to the books. Presumably, the Commissioner of Internal Revenue was preparing to find deficiencies for the several years. It was his duty and his obligation to investigate any circumstance which led him to believe that the taxpayers had taxable income larger than that reported. Necessarily this inquiry would have to be outside of the books, because they supported the returns as filed. There is no restriction on the method or theory by which the Commissioner tests his belief that unreported income exists. He may take the sworn testimony of the taxpayer; he may take testimony of third parties; he may examine and subpoena, if necessary, traders' and brokers' accounts and books; he may examine ad valorem tax records and records of deeds; and he may, of course, examine the bank accounts of the taxpayer. We know of no requirement anywhere laid down, that he must follow any set pattern. It is unquestionably correct to say, as did the Court of Appeals for the Sixth Circuit in Davis v. United States, 226 F.2d 331, 336: "The existence of unreported income may be demonstrated by any practicable \* \* \* proof that is available in the circumstances of the particular situation." Touching on the right to examine bank records this Court has said:

"Where, as here, the records kept by the taxpayer are manifestly inaccurate and incomplete, the Commissioner may look to other sources of information to establish income, and may take into account, as prima facie evidence of income, bank deposits made by the taxpayer during the years in question. There is ample evidence to support the deficiencies in question. Kenney v. Commissioner, 5 Cir., 111 F.2d 374; Halle v. Commissioner, 2 Cir., 175 F.2d 500; O'Dwyer v. Commissioner, 5 Cir., 110 F.2d 925; Hague Estate v. Commissioner, 2 Cir., 132 F.2d 775; Hoefle v. Commissioner, 6 Cir., 114 F.2d 713." Boyett v. Commissioner of Internal Revenue, 5 Cir., 204 F.2d 205, 208.

Of course, it is the general duty of the Commissioner, which, however, is not subject to coercion by the judiciary, to use the method that most easily and clearly permits review by the Tax Court or by the District Court of the correctness of his determinations.

Short of specific violations of some statutory course of conduct, however, the Commissioner is free to make his investigation without instruction from the court as to what theory he is to use to reconstruct income of a taxpayer which his investigation leads him to believe has been incorrectly reported.

The injunction here is not only unprecedented in that it seeks to determine the administrative procedure which the law reserves for the Commissioner, but it is contrary to all equitable principles. The complaint fails to allege that no deficiency is due. It also fails to allege irreparable injury by reason of the inability of the taxpayers to obtain relief in the Tax Court, or even their inability to pay and sue for refund in the District Court.[2]

Moreover, such an injunction violates the precept of the anti-injunction statute, Section 7421 of the Internal Revenue Code of 1954.[3] This suit was a suit

2. They do allege that it would inconvenience them and cause them loss to "liquidate" to obtain the funds to pay the anticipated assessment.

3. "Except as provided in sections 6212(a) and (c), and 6213(a), [not here relevant] no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 U.S.C.A. § 7421(a).

seeking an injunction against the *assessment* and *collection* of the anticipated deficiency in taxes. It should have been dismissed. It does not fall within the recognized exception found by the Supreme Court to exist in Miller v. Standard Nut Margarine Company of Florida, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, or in Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822. Here there is no allegation that the proposed tax is "illegal" in any sense other than that it is too great in amount. Nor are there alleged any exceptional circumstances that have been considered by the courts to take a case out of the operation of the statute.

Here the court has prevented the administrative investigation and determination necessary to the assessment of an additional tax, thus making impossible any legal determination by the Tax Court or the District Court whether available proof shows that a deficiency exists. All questions touching on the weakness of the Director's case and the difficulty of proof will be before the courts for their review once the administrative function is completed. That is when the court may first come upon the scene; not before the investigation has been completed.

The judgment is reversed and the case is remanded to the trial court with directions to dissolve the injunction and dismiss the suit.

CAMERON, Circuit Judge, concurs in the result.