RICHARD D. CHILES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RICHARD D. CHILES and PATRICIA A. CHILES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chiles v. Commissioner
Docket Nos. 15345-81, 15436-81.
United States Tax Court
T.C. Memo 1986-130; 1986 Tax Ct. Memo LEXIS 477; 51 T.C.M. (CCH) 772; T.C.M. (RIA) 86130; April 1, 1986. Richard D. Chiles and Patricia A. Chiles, pro se. Frank Simmons and Robert *478 W. West, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge:* Respondent determined deficiencies in petitioners' income taxes and additions to tax for fraud under section 6653(b) [1] for the years and in the amounts as follows: Deficiencies
Additions to Tax,
in
I.R.C. 1954
Petitioners
Year
Income Tax
Sec. 6653(b)
Richard D. Chiles
1975
$7,314.96
$3,657.48
Richard D. and
1976
2,073.82
1,036.91
Patricia A. Chiles
1977
14,332.63
7,166.32
1978
19,609.22
9,804.61
1979
8,579.01
4,289.51
These cases were consolidated for trial, briefing and opinion.The issues for decision are: (1) Whether petitioner-husband had unreported income for 1975 in the amount of $26,448.04, as determined through use of the bank deposits method. (2) Whether petitioners had unreported income for 1976, 1977, 1978 and 1979 *479 in the respective amounts of $25,737.38, $45,343.66, $45,586.18 and $23,771.33, as determined through use of the bank deposits method. (3) Whether petitioners are entitled to a bad debt deduction for 1977 under section 166. (4) Whether any part of any deficiency for each of the years 1975 through 1979 is due to fraud, so as to render petitioners liable for additions to tax under section 6653(b). (5) In the alternative, in the event that fraud is not established: (a) Whether petitioner-husband's failure to file a return for 1975 was due to reasonable cause and not due to willful neglect; (b) whether any part of any deficiency for each of the years 1975 through 1979 is due to negligence or intentional disregard of rules or regulations. (6) Whether assessment of any deficiency or addition to tax for 1976 is barred by the statute of limitations in section 6501(a). Respondent conceded on brief that certain property sold by petitioners during 1978 was their principal residence and that the gain on the sale was properly deferred pursuant to section 1034. This concession will be reflected in the computation under Rule 155. FINDINGS OF FACT Some of the facts have been stipulated *480 and are found accordingly. Petitioners, husband and wife, who were residents of Ocean Springs, Mississippi, at the time of the filing of their petition in docket No. 15436-81, filed joint Federal income tax returns for the calendar years 1976, 1977, 1978 and 1979. Richard D. Chiles (petitioner) did not file a Federal income tax return for 1975. He resided in Ocean Springs, Mississippi, at the time of the filing of his petition in docket No. 15435-81. Prior to 1972, petitioners lived in the area of Grand Rapids, Michigan, with their four children, Mrs. Chiles' mother, and Mrs. Chiles' half-sister. Petitioner followed the trade of an experienced welder and sheetmental mechanic. Mrs. Chiles worked in automobile of factories for approximately 7 years prior to 1972. In 1972, petitioners decided to move with their family to Walsenburg, Colorado, where petitioner (who held a commercial pilot's license) was to be employed as manager of the local airport at a salary of about $225 per month. He was also furnished a house in which to live. The family remained in Walsenburg until early 1976, when they moved to Ocean Springs, Mississippi. Petitioner began the operation as a sole proprietor *481 of a skating rink in Biloxi, Mississippi, under the name of Skateland, and a checking account for this business was opened in the Gulf National Bank on February 3, 1976. Later in 1976, petitioner began the operation of a second proprietorship, a used car business under the name D&D Motor Sales, in Biloxi. A checking account for this business was opened in the Gulf National Bank on November 4, 1976. There were 11 deposits totaling over $17,000 in that account for the 2-month period of November and December 1976; 84 checks totaling $16,206 were written on the account in the 2-month period. Petitioners' joint return for 1976 did not contain a Schedule C for D & D Motor Sales or in any other way reflect the operations of that business. Petitioner continued to operate the two proprietorships until some time in June or July 1977, at which time the family moved to Riverton, Wyoming. Petitioners purchased approximately 48 acres of land in or near Riverton on which they placed a double-sized trailer which the family used as their home until April or May 1978, at which time the family moved back to Ocean Springs, Mississippi. Prior to the move back to Mississippi, petitioners subdivided *482 the 48-acre tract into 3 parcels which they sold in 1978. Petitioners realized a gain of $14,594 on the sale of the parcel containing the trailer. Their investment in a new residence in Mississippi was $1,388 less than the selling price of the parcel containing the trailer. They reported the $1,388 as a short-term capital gain and elected to postpone recognition of the remainder of the gain ($13,206) pursuant to section 1034. In the notice of deficiency, respondent disallowed the postponement of the gain and increased petitioners' income for 1978 by that amount. As stated above, respondent on brief has now conceded this adjustment. Upon the family's return to Ocean Springs, they purchased a house at One Davis Bayou as their new residence. Petitioner was compelled to repossess the residence which he had sold prior to moving to Wyoming, and he converted that property to a duplex held for rental. During the taxable years here in issue petitioner owned at various times 9 airplanes, 6 of which he sold during these years. One of such sales that occurred in 1978 was of a Mooney airplane for which petitioner was paid $22,500. Neither that sale nor the sales of the other 5 airplanes *483 was reported on petitioners' tax returns. On December 13, 1977, while petitioner was living in Wyoming, he received a check for $800 drawn payable to the order of "Dicks Welding Service." The check bore the notation that it was for "Steel Work." The check was endorsed by Mrs. Chiles and was deposited in petitioners' account at the Riverton State Bank. That transaction is not reported on the return for 1977. Upon audit of petitioner's tax liability for 1975 and petitioners' joint returns for each of the years 1976 through 1979, respondent's agents found that petitioner had had dealings in airplanes, boats and guns during the period 1975 through 1979 which were not reflected on the returns and with respect to which petitioners refused to furnish any records. Respondent used the bank deposits method of determining petitioners' income for the years here involved. After adjustments for returned items, transfers of funds, loans and other nontaxable income deposits, the net amounts of deposits in bank accounts maintained by petitioner-husband during the taxable year 1975 were as follows: Account
Bank
Number
Net Deposits
Minnequa Bank of Pueblo
031-231-8
$ 1,991.87
St. Mary's Credit Union
3533
5,827.84
Otero Savings and Loan
0500371
17,528.33
Minnequa Bank
0399566
1,100.00
Total
$26,448.04
*484 With the exceptions noted hereafter, after adjustments for returned items, transfers of funds, loans and other nontaxable income deposits, the net amounts of deposits in bank accounts maintained by petitioners during the taxable years 1976 through 1979 are as follows: Account
Bank
Number
12-31-76
12-31-77
12-31-78
12-31-79
1st National Bank of
Jackson County
1787942
$ 5,773.65
$13,433.36
Minnequa Bank of
Pueblo
0312318
2,616.36
Gulf National Bank -
"Skateland"
1009443
13,811.00
6,585.09
Gulf National Bank
1800275-0
2,488.75
Gulf National Bank -
"D & D Auto"
1011839
15,532.69
26,439.72
Otero Saving and Loan
0500371
45.93
Riverton State Bank
300847
1,233.80
15,510.00
1st National Bank of
Riverton
0018176
28,587.88
1st Mississippi
National Bank
4055661
32,580.96
36,505.02
Riverton State Bank
805781
46.81
5,099.42
Total Net Deposits
$40,268.38
$76,279.85
$48,137.77
$41,604.44
A deposit of $46.81 in the Riverton State Bank which is included in the above schedule in 1978 should have been shown as a 1977 deposit, and a deposit of $5,022.42 included in 1979 should have been shown as a 1978 *485 deposit. [2]
During 1975, petitioner did not receive any gifts. During 1975, petitioner did not receive any inheritances, legacies or devises. During 1975, petitioner did not receive any nontaxable or excludable income, receipts, cash or other assets. During 1975, petitioner had no allowable business expenses or excess itemized deductions. During the taxable years 1976 through 1979, petitioners did not receive any gifts. During the taxable years 1976 through 1979, petitioners did not receive any inheritances, legacies or devices. On their Federal income tax return for the taxable years 1976, 1977, 1978 and 1979, petitioners reported taxable income of $5,608, $1,743, $5,768.02 and $7,443.07, respectively. On the Schedule C for D & D Motor Sales attached to their 1977 return, petitioners claimed a deduction on line 17 (Bad debts arising from sales or services) of $3,500, which they described as being for "2 cars stolen." Respondent disallowed the deduction with the following explanation: The bad debt deduction shown on your return as the *486 cost of two stolen autos is not allowable under Section 166 of the Internal Revenue Code because the cost of the stolen autos has been deducted through cost of goods sold. Accordingly, your taxable income for 1977 is increased by $3,500.00. During the course of the examination by a special agent of respondent, petitioner revealed only two of the bank accounts he maintained and stated that his only sources of income were the skating rink, the used car lot, and the proceeds of the land sales in Wyoming. Petitioners demanded the return of some of their records which had initially been furnished the special agent before the special agent had the opportunity to examine them. They refused the agent's request for records relating to sales of airplanes, boats and guns, stating to the agent that those were personal items and none of the Internal Revenue Service's business. OPINION The first issue is whether petitioner (for 1975) and petitioners (for 1976 through 1979) had unreported income as determined by respondent. Respondent computed petitioner's income for 1975 and petitioners' income for each of the years 1976 through 1979 by the bank deposits method. In *487 Harper v. Commissioner,54 T.C. 1121, 1129 (1970), we stated: Where a taxpayer has made numerous deposits in bank accounts, the sources or nature of which are not accounted for or recorded in books and records maintained by him, determinations made by the Commissioner of income subject to tax on the basis of such deposits have been approved in many instances; and it has been repeatedly held that a presumption of correctness attaches to such determinations and that the taxpayer has the burden of overcoming such presumption. [Citations omitted.] Use of the bank-deposits method is proper even when the taxpayer keeps books and records which support his return as filed. Campbell v. Guetersloh,287 F.2d 878 (C.A. 5, 1961). Respondent is not bound to accept a taxpayer's return or his books at face value. Holland v. United States,348 U.S. 121 (1954). * * * In this case petitioners did not furnish respondent with sufficient records to compute their income for the years in issue and specifically refused to furnish any records relating to petitioner's dealings in airplanes, boats and guns. Based on this record, we conclude that respondent *488 quite properly used the bank deposits method of determining petitioners' income for each of the years in issue. Though not conclusive, bank deposits are prima facie evidence of income. Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In the instant case, the parties have stipulated the net deposits, i.e., the deposits after adjustments for returned items, transfers of funds and other nontaxable income. They have also stipulated (or petitioners have admitted) that they received no gifts, inheritances, legacies, devises, or "any nontaxable or excludable income, receipts, cash or other assets." Such broad and seemingly all-inclusive stipulations would appear to negate any eliminations from the stipulated net deposits. Nevertheless, petitioners contend that they brought a substantial amount of cash into the taxable years which accounts, in some undetermined amount, for some of the deposits. They claim that this cash was composed of an accumulation of savings for years prior to 1972 when they moved to Colorado and of the proceeds of the sale of their residence in Michigan prior to that move. Petitioners also *489 claim that they received insurance proceeds of several thousand dollars in respect of theft and casualty losses and tenant-inflicted damage to their rental property. While it is not unreasonable that petitioners had some proceeds from the sale of the Michigan residence, and perhaps some savings when they moved to Colorado, there is no satisfactory proof of the amount they had or that it was deposited and redeposited in bank accounts at any time, and certainly not deposited during the years here in issue. The record is not clear as to the years petitioners claim to have received the insurance proceeds. If any accumulated cash funds or insurance proceeds were deposited, the record does not show into which bank accounts the deposits were made or the years in which the deposits were made. The stipulation of the net deposits after all proper adjustments for the years here in issue is contrary to a claim that any such funds were deposited during these years. On the basis of this record, we hold that petitioners have failed to carry their burden of showing error in respondent's determination of unreported income, and his determination, as modified by the shifting of the years of the *490 deposits in the Riverton State Bank from 1978 and 1979 to 1977 and 1978 (as set out in the Findings of Fact), is approved. The next issue is whether petitioners are entitled to a deduction in 1977 for two automobiles stolen from their used car lot. Petitioners presented no evidence on this issue at trial, and we take it they have abandoned the issue. In any event, we conclude that respondent's disallowance was correct. The cost of the automobiles purchased by petitioners was included in the cost of goods sold; therefore, to allow a deduction for theft of automobiles would amount to a double deduction for the same item. [3]
The next issue is whether petitioners are liable for additions to tax for fraud. Section 6653(b) provides for an addition to tax if any part of an underpayment (deficiency) is due to fraud. Fraud is not imputed or presumed. The burden is upon respondent to prove fraud by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure.
Petitioner filed no return for the year 1975. We have held that he had unreported income of $26,448.04 for that *491 year based on his failure to show error in respondent's computation as set forth in the notice of deficiency. The differences in petitioners' income as determined by the bank deposits method and their reported income for each of the years 1976 through 1979 were $25,737.38, $45,343.66, $45,586.18 and $23,771.33, respectively. Again, based to an appreciable extent on petitioners' failure to show error in respondent's computation, we have held that petitioners have underreported their income in these amounts. However, to show fraud respondent must establish that there is in fact unreported income and that the taxpayer failed to report such income with the intent to evade tax. Respondent cannot rely on petitioners' failure of proof to show unreported income for the purpose of establishing fraud. Based on this record, we conclude that respondent has in fact shown unreported income in each year here in issue. The record shows that petitioner was supporting six to seven people during the years 1972 through 1974 on a salary of about $225 a month. Petitioner also testified that he bought an airplane for $11,500 during these years. The record shows petitioners took trips during these *492 years, at least one of the trips being to Mexico. Even if petitioners did have some funds from savings and the sale of a house in Michigan in 1972, respondent has shown facts to clearly establish that they could not have had a sufficient amount remaining in 1975 or any subsequent year to account for the net bank deposits in excess of reported income. The cash petitioners had in 1972 when they moved to Colorado was variously estimated from $15,000 to $30,000. In addition to supporting his family, petitioner testified that he was a gun collector and a pilot. He stated that all during this period of time he had one or more airplanes. On this record, we conclude that respondent has shown a substantial understatement of income in each of the years here in issue. In Stone v. Commissioner,56 T.C. 213, 224 (1971), we stated: The mere existence of the deficiencies in tax liability does not show fraud. * * * However, exceedingly large discrepancies between the [taxpayer's] actual net income and the net income reported on the tax returns do constitute evidence supporting fraud, when such discrepancies are unexplained.[Citations omitted.] * * * Petitioner's failure *493 to disclose all of petitioners' bank accounts to respondent's agent is evidence of fraud. Stone v. Commissioner,supra at 224. Furthermore, petitioners' demand for the return of a portion of the records they initially produced for respondent's agents and their refusal to furnish any records of dealings in airplanes, boats and guns indicate to us that petitioners were concealing evidence of income which they had not reported, certainly a badge of fraud. In addition, there are three specific omissions of income that deserve comment.The first is a total omission from petitioners' 1976 return of any reference to D & D Motor Sales. Petitioner was operating that business in November and December 1976 and bank records for that business show deposits totaling more than $17,000 and checks drawn against the amount of $16,206. The $17,000 was composed of 11 separate deposits. The second item concerns a check in the amount of $800 issued on December 13, 1977, by one Spencer Byington of Riverton, Wyoming, for "Steel Work." That check was drawn payable to "Dicks Welding Service" and was endorsed in Mrs. Chiles' handwriting and deposited in petitioners' account at the *494 Riverton State Bank. Mindful that petitioner was an experienced welder and sheetmetal mechanic by trade, and that the return for 1977 shows no source of income to petitioners while they were in Wyoming, we conclude that petitioners were not truthful in their denial of any such business endeavor as "Dicks Welding Service." The third item of specific omission concerns the sale by petitioner of a Mooney airplane in 1978 for $22,500. Petitioner testified that some years prior he had been given a Piper Apache by a friend which he traded for the Mooney that he sold for $22,500. Petitioner stated that the Apache was an old plane in bad condition when it was given to him and that he fixed it up before he traded it for the Mooney. Petitioner testified that he would buy old airplanes and fix them up and then sell them. Petitioner's claim is that since in his view airplanes, guns and boats were a hobby with him and not a business, anything he made on the sale of these items was not income. He said these items were a hobby and sometimes he made money on a sale and sometimes he did not. Clearly any gain petitioner made on the sale of airplanes, guns and boats should have been reported *495 as income. However, in determining whether the omission of the income he made on the sales of these items was fraudulent with intent to evade tax, the question is whether from the record as a whole we find the evidence to be clear and convincing that he did knowingly fail to report this income. On the basis of this record, we conclude that petitioner did knowingly fail to report all his income. Petitioner testified that he or his wife revealed to the persons who prepared their returns for the years 1976 through 1979 all of the income which petitioners had. Yet, as the foregoing three specific omissions point up, petitioners had not done so. If in fact petitioners had been attempting to properly report their income, they would have disclosed these sources of income to the tax return preparer and inquired whether they were taxable. In our view, the failure to do so is another effort to conceal income and indicates a fraudulent intent to evade the payment of tax. Finally, petitioner's failure to file any return at all for 1975, when he had over $26,000 of income, is an indication of fraud. Considering the record as a whole, we are persuaded that respondent has proved by clear *496 and convincing evidence that a part of the deficiency for each of the taxable years was due to fraud. His imposition of the addition to tax for fraud for all years is, accordingly, sustained. Fraud having been established, it is unnecessary to consider the issues pleaded in the alternative by respondent. The last issue is whether the 3-year statute of limitations in section 6501(a) bars the assessment of the deficiency and addition to tax for 1976. The return for that year was filed on or about April 15, 1977, and the notice of deficiency in docket No. 15436-81 was issued on April 3, 1981. Section 6501(a) provides as the general rule that assessment must be made within 3 years after a return has been filed. However, section 6501(c)(1) provides that in the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed at any time. For the same reasons stated in our holding that a part of the deficiency for 1976 was due to fraud, we here find and hold that petitioners' return for that year was false or fraudulent with the intent to evade tax. Therefore, the 3-year statute of limitations is not a bar to assessment of the deficiency and addition to *497 tax for that year. Decisions will be entered under Rule 155.
Footnotes
*. By Order of the Chief Judge, this case was reassigned from Special Trial Judge Randolph F. Caldwell↩ to Judge Irene F. Scott. 1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Respondent filed a motion for leave to amend his answer to conform the pleadings to the proof and the Court granted this motion.↩
3. Clifton v. Commissioner,T.C. Memo. 1985-395↩.