J. PAUL SCOTT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scott v. Commissioner
Docket No. 412-78
United States Tax Court
T.C. Memo 1989-559; 1989 Tax Ct. Memo LEXIS 557; 58 T.C.M. (CCH) 372; T.C.M. (RIA) 89559; October 11, 1989
J. Paul Scott, pro se. James Rich, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: This case was assigned to Special Trial Judge Daniel J. Dinan pursuant to the provisions of section 7456(d) (redesignated *558 as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rules 180, 181 and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE DINAN, Special Trial Judge: Respondent determined a deficiency in petitioner's 1974 Federal income tax in the amount of $ 30,875.36 and an addition to tax under section 6653(a) in the amount of $ 1,543.77. The deficiency and addition to tax are a result of respondent's determination, using the source and application of funds method of reconstructing income, that petitioner failed to report $ 50,594.57 in income for the taxable year 1974. Respondent's schedule showing the figures used in arriving at the $ 50,594.57 amount is as follows: Source and Application of Funds
Sources of Funds
Cash on hand as of 1/1/74
$     --  Bank balance as of 1/1/74:
Bank of Forest Park - Account No. XX9-592
2,428.82
C & S Bank - Account No. XXX-X9-461
4,310.11
Account No. XXX-X3-204
--  Proceeds from refund on bond - Dub-King Bonding Co.
10,000.00
Proceeds from Sale of house per Schedule C
37,000.00
W-2 Income - St. Joseph's Infirmary
12,136.14
Refund from Internal Revenue Service
1,853.00
Rental income
7,950.00
Refund from State income tax
230.00
State of Georgia Dept. of Revenue - A
454.10
B
165.73
Depreciation - Schedule C
2,201.00
Loss On Oldsmobile - Schedule C
774.00
TOTAL
$ 79,502.90
Application of Funds
Cash on hand as of 12/31/74
$     --  Bank balance as of 12/31/74:
Bank of Forest Park - Account No. XX9-592
166.96
C & S Bank - Account No. XXX-19-461
--  Account No. XXX-X3-204
20,903.00
Loans Paid:
Decatur Federal Savings & Loan -
Loan No. 057069-01 - Payments
2,168.00
Payoff
28,555.65
DeKalb Federal Savings & Loan -
Loan No. 50018315
3,806.00
Loan No. 50018316
2,563.00
Loan No. 50018317
26,173.53
Cashiers Checks:
C & S Bank - Payable to James McDaniels, Atty.
1,020.00 - Payable to Fred T. Holt,
James Bray, Atty.
4,120.00
First National Bank of DeKalb County
Payable to Dub-King Bonding Co.
1,250.00
Payable to Dub-King Bonding Co.
12,500.00
Automobile:
Otwell Motor Co., Cummings, Georgia - LTD Ford
4,123.55
Cancelled checks which have not been previously
considered:
Bank of Forest Park - Account No. XX9-592
5,824.68
C & S Bank - Account No. XXX-X9-461
2,308.98
Account No. XXX-X3-204
9,471.36
Bald Ridge Marina
569.00
Federal Tax Withheld - W-2
2,163.42
FICA Tax Withheld - W-2
675.65
Blue Cross Withheld - St. Joseph's Infirmary
423.58
Parking Withheld - St. Joseph's Infirmary
45.00
Invoices Paid by Cash
966.67
State Tax Withheld per W-2
298.81
TOTAL
$ 130,097.47
Unreported Income
$  50,594.57
*559 Respondent also disallowed $ 13,109.84 in schedule C deductions and $ 556.00 in medical expenses; increased petitioner's sales tax deduction by $ 259.77 and increased petitioner's self-employment tax by $ 130.39. Concessions having been made by the parties, the issues remaining for decision are (1) whether petitioner can prove that certain items included in respondent's use of the source and application of funds method of reconstructing income were improperly attributed to petitioner, (2) whether petitioner is entitled to more schedule C deductions than allowed by respondent, and (3) whether petitioner is liable for the addition to tax under section 6653(a). [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and accompanying exhibits are incorporated by this reference. Petitioner resided in Leavenworth, Kansas, at the time his petition was filed in this case. During the taxable year 1974, petitioner was married to Margie V. Scott, now known as Margie V. Bothe. They were divorced subsequent to 1974. Petitioner filed *560 a married filing separately Federal income tax return for the taxable year 1974. Petitioner was employed by St. Joseph's Infirmary as a lab technician during 1974. Petitioner received $ 12,136.14 in wages from that job during that year. During his off-hours from that job, he built houses for resale. Petitioner sold only one home in 1974 located at 2772 Idlewild Road. Petitioner sold the property for $ 37,000.00. A portion of the proceeds from the sale was temporarily withheld by a title insurance company because of a possible claim against the title. The claim was subsequently cleared up, and the insurance company remitted to petitioner in 1974 the withheld amount of $ 11,256.37. Petitioner had two separate bank accounts during the taxable year 1974 and held a power of attorney over a third. The first account was with the Bank of Forest Park, located in Forest Park, Georgia, account number XX9-592. This account was used as petitioner's business account for his home construction business. Most of the activity in the account during 1974 occurred during the first three months of that year. Margie V. Scott also had signatory authority on the account. The second account was *561 with the Citizens and Southern National Bank, located in Atlanta, Georgia, account number XXX-X9-461. It was in the name of both petitioner and his wife (Margie V. Scott or J. Paul Scott). That account was closed in April, 1974. The balance of that account, $ 3,192.48, was transferred to a new account at the Citizens and Southern DeKalb Bank, located in Avondale Estates, Georgia, account number XXX-X3-204. The account was opened on April 2, 1974, and was in Margie V. Scott's name only. However, petitioner held a power of attorney over the account effective September 19, 1974. After the account was opened, petitioner deposited his paychecks into it. Additional checks or money orders made payable to petitioner were also deposited into that account in the amount of $ 15,292.73. Of that amount, $ 11,256.37 was from the payment the title insurance company made to petitioner after the sale of the house at 2772 Idelwild Road. During the taxable year 1974, $ 39,308.92 was deposited into the account (including the initial deposit of $ 3,192.48); $ 18,670.91 was withdrawn from the account leaving a yearend balance of $ 20,638.01. [3] Regarding the $ 18,670.91 in withdrawals, $ 9,199.55 *562 of it was paid to DeKalb Federal Savings and Loan and Otwell Motor Company, Inc., and the remaining $ 9,471.36 in withdrawals was spent on miscellaneous items. The balance in the account for the first statement in January, 1975 was $ 21,466.31. Most of that money was used to build a house on a lot at 3329 Tulip Drive. The lot was owned by Margie V. Scott. Petitioner had transferred this lot to her by warranty deed on April 1, 1974. The stated consideration on the deed was "one dollar with love and affection to my wife." No real property transfer tax was paid on the transfer. Petitioner held an option on the property. The option price was for $ 100.00, an amount far below fair market value. The house cost approximately $ 21,000.00 to build. The house was rented to a family named the Lemons in September 1975. Margie V. Scott eventually sold the property on March 4, 1982. Petitioner *563 did not receive any of the proceeds from this sale. Petitioner, either by himself or with his wife (the record is unclear on this point) owned property, including a house, at 3341 Tulip Drive. This property was their residence during 1974. In 1971, petitioner and his wife took out a loan of $ 30,000 from Decatur Federal Savings and Loan Association, Decatur Georgia. They used their residence at 3341 Tulip Drive to secure the debt. [4]
On April 1, 1974, petitioner transferred his ownership interest in the above-mentioned property by deed to his wife. The stated consideration was "one dollar with love and affection to my wife." No real property transfer tax was paid on the transfer. On July 25, 1974, Margie V. Scott paid off the outstanding debt on the property thereby cancelling the mortgage. She paid off the outstanding loan balance of $ 28,555.65 with three checks. The first check was drawn on the Citizens and Southern DeKalb Bank, Avondale Estates, Georgia. It was dated July 23, 1974, and was *564 in the amount of $ 10,000.00. A second check was drawn on the same bank, this time in the amount of $ 8,500.00 and dated July 25, 1974. A third check was drawn on the Trust Company Bank, Atlanta, Georgia. It was dated July 25, 1974, and was in the amount of $ 10,000.00. Margie V. Scott was the purchaser of all three checks. The money used to purchase the three checks was not withdrawn from the account Margie V. Scott had at Citizens and Southern DeKalb Bank, account number 331-73-204. Shortly after Margie Scott paid off the mortgage on the property at 3341 Tulip Drive, she granted petitioner an option to purchase the property for $ 100.00 (option price). The option was dated August 13, 1974, and was exercisable by petitioner for 10 years. The property was worth substantially more than the option price. During the taxable year 1974, petitioner and his wife Margie V. Scott were in physical possession of a large hoard of cash. They were holding the cash for one Morris Lynn Johnson (Johnson). Johnson got the money from robbing a bank in Louisville, Kentucky, sometime during the spring of 1974. Johnson approached petitioner about holding the money for him, because he was fearful *565 that if he got caught, the money could be confiscated. Johnson gave petitioner and his wife $ 60,000.00 of the stolen money to hold for him. Johnson warned petitioner that if petitioner did not give him his money back, he would implicate petitioner in a Marietta, Georgia, bank heist. Twelve thousand dollars of the $ 60,000.00 in stolen money was in new bills. Petitioner was fearful that if these bills were discovered, they could be traced to the robbery so he took the new bills and buried them in his backyard. The remaining cash was changed into $ 100.00 bills by petitioner and Margie V. Scott's daughter, Beverly. Petitioner paid Beverly two or three thousand dollars of the stolen money for her assistance in changing the stolen money. After petitioner changed the stolen money into $ 100.00 bills, he gave the money to Margie V. Scott and asked her to wrap the money in tin foil and store it in a secret compartment over the stove. She did. Shortly thereafter, Johnson called petitioner and Margie V. Scott and asked them to make bond for Johnson's wife Katie. The bond was for $ 25,000.00. Petitioner took some of the stolen money and gave it to Margie V. Scott who purchased *566 two checks made payable to Dub-King Bonding Company in the amounts of $ 12,500.00 and $ 1,250.00, respectively. The checks were used to post bond. Petitioner had to sign a promissory note, payable on demand, for $ 12,500.00 to guarantee the balance of the $ 25,000.00 bond. The $ 1,250.00 check was a nonrefundable fee paid to the bonding company. The bonding company later refunded $ 10,000 of the bond. The $ 10,000.00 refund was deposited in Margie V. Scott's bank account at Citizens and Southern DeKalb Bank, account number XXX-X3-204. After Katie Johnson got out of jail on bond, she flew to Atlanta to pick up some of her husband's stolen money that petitioner was holding. The money she picked up was the new bills which petitioner had buried in his backyard. In addition, Margie V. Scott, who had befriended Johnson, took $ 5,000.00 of the stolen money at Johnson's direction and flew to Louisville, Kentucky, to pay the bill of an attorney Johnson had hired. Petitioner, who had transferred ownership of his residence at 3341 Tulip Drive to Margie V. Scott, instructed her to pay off the mortgage on the property. She did just that by using a portion of the stolen money to purchase *567 the three checks of $ 10,000.00, $ 10,000.00 and $ 8,500.00, respectively. Margie V. Scott purchased a new Ford LTD Brougham for $ 6,549.55 on October 19, 1974. The car was titled in her name and purchased with a check from her account at Citizens and Southern DeKalb Bank. Petitioner traded a 1972 Oldsmobile in as part payment on the purchase price. The dealer gave him a credit of $ 2,426.00 for his trade-in leaving a cash balance of $ 4,123.55 which Margie V. Scott paid. Petition took a sales tax deduction on the purchase of the automobile in the amount of $ 119.55. Petitioner also deducted $ 108.00 in straight-line depreciation on the automobile for business use for taxable year 1974. OPINION The first issue for decision is whether petitioner understated his taxable income for the taxable year 1974 in the amount determined by respondent using the source and application of funds method of reconstructing income. The Commissioner may determine the existence and amount of unreported income by any method that will, in his opinion, clearly reflect the taxpayer's income. Section 446(b); Section 1.446-1(b)(1), Income Tax Regs.; Holland v. United States, 348 U.S. 121, 130-132 (1954); *568 Campbell v. Guetersloh, 287 F.2d 878, 880 (5th Cir. 1961). The use of the source and application of funds method has long been an acceptable method of determining income. See, e.g., Cohen v. Commissioner, 9 T.C. 1156, 1162-1163 (1947); affd. 176 F.2d 394 (10th Cir. 1949). The source and application of funds method is based on the assumption that the amount by which the taxpayer's application of his funds exceeds his known sources of income is taxable income, absent some showing by the taxpayer of a nontaxable source. Taglianetti v. United States, 398 F.2d 558 (1st Cir. 1968), affd. per curiam 394 U.S. 316 (1969). Respondent's determinations in his notice of deficiency are presumed correct, and petitioner has the burden of proving that he received less taxable income than respondent determined therein. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Respondent, on brief, made five adjustments [5] (all reductions) to the application of funds thereby reducing petitioner's alleged unreported income by $ 4,900.52 to $ 45,694.05. *569 We have carefully examined the source and application of funds analysis that respondent used to determine the deficiency in tax. Based on our examination, we conclude that the following adjustments need to be made to the schedule to accurately reflect petitioner's unreported income for the taxable year 1974. Checking Account No. XXX-X3-204
This is the account Margie V. Scott had at Citizens and Southern DeKalb Bank located in Avondale Estates, Georgia. She opened this account in April, 1974. Petitioner's name was not on the account; however, he held a power of attorney over the account effective September, 1974. This account had a yearend balance of $ 20,903.63. Respondent determined that this amount was an application of funds by petitioner for taxable year 1974. Respondent also included, as an application of funds, $ 9,471.36 in miscellaneous withdrawals on the account during taxable year 1974. Petitioner argues that since the account was not in his name, it should not be attributed to him in determining his application of funds during taxable year 1974. While it is true that the account was in Margie V. Scott's name only, it is equally true that petitioner *570 had access to the funds in the account because of the power of attorney he held over the account. However, merely because petitioner held a power of attorney over the account does not necessarily determine that the funds in the account should be attributed to him. A power of attorney, properly used, only allows the attorney to expend funds in the account for the account owner's benefit. The funds are not be be converted to the attorney's own use. Nevertheless, if petitioner improperly used the power of attorney by spending the account funds for himself, then clearly the amounts so converted are attributable to him. However, this is simply not the case here. There is no evidence that petitioner drew checks or otherwise withdrew money from the account. Granted, the account was opened with funds from a recently closed joint account, and petitioner did deposit his paychecks into the account as well as additional checks and money orders payable to petitioner in the total amount of $ 15,292.73. It would make common sense that petitioner would deposit his paychecks into an account used to purchase nondescript, everyday household items. Indeed, petitioner is not contesting the $ *571 9,471.36 in miscellaneous expenditures purchased with funds from the account. What petitioner is contesting is the fact that respondent attributed the ending balance in the account to him. He contends that he did not "own" those funds because they were in an account in his wife's name and that the funds were used to build a house owned by his wife. We agree with petitioner. The account was in his wife's name; he did not legally have access to it to spend the funds in it on his own behalf. We also agree that the yearend balance in the account was used to build a house on the lot at 3329 Tulip Drive and that petitioner did not share in the proceeds from the subsequent sale of that property. Respondent further contends, however, that since petitioner held an option to purchase the property for an amount well below fair market value that he had some type of interest in the property. And, since petitioner still had a purported interest in the property, he benefited from the yearend balance of the bank account because it was used to build a house that he could purchase for $ 100.00. We do not know why petitioner held an option on the property. We do know that he never exercised *572 it. After reviewing all relevant facts, we find that petitioner did not benefit from the yearend balance in the account merely because he held an option on the property improved with the funds in the bank account. Accordingly, respondent erred in including the yearend balance of $ 20,903.63 as an application of funds by petitioner. Final mortgage payment on property at 3341 Tulip Drive
Respondent determined as an application of funds the pay-off of the mortgage on the property at 3341 Tulip Drive. The pay-off was in the amount of $ 28,555.65. Petitioner and his wife took out a first mortgage on the property in 1971 in the amount of $ 30,000.00. In April 1974, petitioner transferred whatever interest he had in the property to his wife. Later, in July, 1974, Margie V. Scott paid off the mortgage on the property with some of Johnson's stolen money. In August 1974, Margie V. Scott granted petitioner an option to purchase the property for $ 100.00. Petitioner never exercised the option. Petitioner argues that this expenditure should not be an application of funds attributed to him because the property was no longer his and because the money his wife used to pay *573 off the mortgage came from a known source. We agree with petitioner. First of all, the expense was not his, it was his wife's. Even though he had an option to purchase, he did not exercise it. Also, he was granted the option after the mortgage was paid off. So, when the mortgage was paid off, he had no interest in the property. Secondly, the money came from a known source -- Johnson's stolen money. The source and application of funds method of reconstruction of income is only applicable when the discrepancy between the source and application of funds cannot be explained by the taxpayer. In this case, petitioner did explain the source, and it was not his money that was used. Accordingly, we hold that respondent erred in determining that the $ 28,555.65 mortgage pay-off was an application of funds by petitioner. Jail Bond
The next application of funds item that petitioner is contesting are two expenditures to Dub-King Bonding Company for a jail bond. The bond was for Johnson's wife Katie who was arrested after Johnson had given petitioner the stolen money. Margie V. Scott, at petitioner's direction, took $ 13,750.00 of the stolen money and purchased two checks *574 for $ 1,250.00 and $ 12,500.00, respectively. The checks were cashier's checks, they were not checks drawn on Margie V. Scott's account at Citizens and Southern DeKalb Bank. Petitioner also had to sign a note for $ 12,500.00 to guarantee the balance of the $ 25,000.00 bond. Respondent included the two expenditures of $ 1,250.00 and $ 12,500.00, respectively, as an application of funds. After reviewing the evidence on these expenditures, it appears quite obvious that the two expenditures were not petitioner's. The money used was Johnson's, and the money was spent to get Johnson's wife out of jail. It was neither petitioner's money nor petitioner's expense. Petitioner did not even obtain the two checks; his wife did. Therefore, respondent erred in attributing these two expenditures to petitioner. Respondent also included, as a source of funds, a refund on the bond in the amount of $ 10,000.00 which was deposited into Margie V. Scott's account at Citizens and Southern DeKalb Bank. The money refunded was not originally petitioner's, it was Johnson's. Also, the money was deposited into Margie V. Scott's account which helps explain the large yearend balance. We have previously *575 held that the yearend balance in the account is not attributed to petitioner. Petitioner had no control over the money; it was not his nor did he benefit from it. Respondent erred in including it as a source of funds by petitioner. Purchase of 1975 LTD Ford
Margie V. Scott purchased a new 1975 Ford LTD from Otwell Motor Company in October of 1974. The total purchase price was $ 6,549.55. Petitioner traded in a 1972 Oldsmobile as part payment on the new car. The dealer gave a credit of $ 2,426.00 on the trade-in. This left a balance of $ 4,123.55 due on the purchase. Margie V. Scott paid off this amount with a check from her checking account at Citizens and Southern DeKalb Bank. Petitioner took both a sales tax deduction on the purchase and a depreciation deduction on its business use during 1974. Respondent determined that the purchase of the auto ($ 4,123.55) was an application of funds by petitioner. Respondent later conceded one-half of this amount, so the amount still in controversy is $ 2,061.78. Petitioner contends that since the car was not titled in his name nor was the car purchased with his funds (the cash balance that is) then the purchase of the *576 automobile should not be attributed to him as an application of funds. We agree. Since petitioner did not purchase the car nor is the car his, the expense of purchasing it should not be allowed as an application of funds. Petitioner deducted $ 119.55 in sales tax on the purchase price of the automobile. Section 164, as in effect in the year in issue, allows a deduction for sales tax paid during the taxable year. Section 164(a)(4). However, only the consumer who paid the tax may deduct it. Section 1.164-5, Income Tax Regs. Therefore, petitioner cannot deduct the sales tax expense because he did not incur it. Petitioner also deducted $ 108.00 in depreciation on the automobile for business use. We are going to disallow it for the same reason; namely, that since the automobile was not petitioner's property, he did not incur the expense. After noting concessions made by respondent and after subtracting out the items which we found were improperly attributed to petitioner as either a source or application of funds, it appears that petitioner's application of funds no longer exceeds his source of funds. Consequently, since there is no excess there is no unreported income. As *577 to the other items adjusted on petitioner's return by respondent, since petitioner failed to produce any evidence that respondent erred in making the adjustments, he has failed in his burden of proof and respondent prevails on those items. As to the addition to tax under section 6653(a), since petitioner has offered no evidence to show why it should not be imposed, we uphold respondent's determination on this issue. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The other adjustments to income are automatic pending the outcome of the issues set forth above.↩
3. The yearend balance, as shown on the bank statement, was $ 20,903.63. There has been no adequate explanation why the deposits minus withdrawals in the account does not equal the yearend balance. For purposes of this opinion we will use the $ 20,903.63 figure as the true year end balance.↩
4. The loan was secured by a "deed securing debt" on the property at 3341 Tulip Drive. For reasons of simplicity, we will hereinafter refer to that document as a mortgage.↩
5. ↩
Amount After
Item
Statutory Notice
Concession
Mortgage Payment
$ 2,168.00
$ 1,734.40
Loan Payment
3,806.00
2,706.00
Payment to Attorney
1,020.00
- 0 - Purchase of Auto
4,123.55
2,061.78
Payment to Marina
569.00
284.50
FICA Withholding
675.65
675.00
Totals
$ 12,362.20
$ 7,461.68