AUGUSTINE'S INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PAUL AUGUSTINE AND SUZANNE AUGUSTINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Augustine's, Inc. v. Commissioner
Docket Nos. 24323-84; 24324-84.[1]
United States Tax Court
T.C. Memo 1988-11; 1988 Tax Ct. Memo LEXIS 11; 54 T.C.M. (CCH) 1495; T.C.M. (RIA) 88011; January 6, 1988; As amended January 6, 1988 Edward R. Joyce, for the petitioners. Matthew J. Fritz, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in statutory notices of deficiency dated April 9, 1984, determined deficiencies in petitioners' income tax and additions to tax, as follows: Augustine's Inc. - Docket No. 24323-84
Addition to Tax
Taxable Year Ended
Deficiency
Section 6653(a) [2]
May 31, 1978
$ 169,132
$  8,457
May 31, 1980
243,198
12,160
May 31, 1981
345,665
17,283
*12 Paul and Suzanne Augustine - Docket No. 24324-84
Addition To Tax
Taxable Year
Deficiency
Section 6653(a)
1977
$ 264,138
$ 13,259
1978
132,226
6,611
1979
196,208
9,810
1980
382,120
19,106
The issues for our consideration in these consolidated [3] cases are as follows: (1) Whether corporate-petitioner's income was underreported; (2) whether respondent's notice to corporate-petitioner was arbitrary and capricious because of respondent's reconstruction of gross income, and/or whether petitioner has shown that respondent's method of reconstruction was in error; (3) whether petitioners understated 25 percent or more of gross income in various taxable years so as to permit a 6-year period for assessment; (4) whether corporate-petitioner is entitled to various claimed deductions and credits which have generated claimed carrybacks and carryovers of losses and credits affecting 2 years other than those in which respondent *13 determined deficiencies; [4] (5) whether corporate or individual petitioners are liable for additions to tax under section 6653(a); (6) whether individual petitioners failed to report the reconstructed income from corporate-petitioner; (7) whether individual petitioners are entitled to a short-term capital loss involving 1977 coffee futures; (8) whether petitioners are entitled to and have substantiated various itemized deductions for the taxable years 1976 through 1980; and (9) whether individual petitioners are entitled to use income averaging. FINDINGS OF FACT
*14 The parties have stipulated various facts and exhibits, all of which are incorporated by this reference. Augustine's Inc. (corporation), petitioner in docket No. 24323-84, was incorporated in Illinois on May 10, 1956, [5] and had its principal place of business in Belleville, Illinois, during the years in issue and at the time its petition was filed. Paul Augustine (Paul) and Suzanne Augustine (Suzanne), petitioners in docket No. 24324-84, are husband and wife and resided at Belleville, Illinois, during the years in issue and at the time their petition was filed. Paul owned all of the outstanding shares of stock in corporation and he was its president during all pertinent years. Corporation operated a restaurant which was the largest restaurant and meeting facility in the "Metro East" area. [6] Total seating capacity of the dining and banquet rooms was 3,637 persons. Beginning after the fall of 1978, the facility included a "disco" with a 300 person capacity. The business operation also included a bar and lounge located within an adjacent motel. The restaurant was known by variations on the name Augustine's and the bar and lounge was called the "Scuttlebutt." *15 Corporation's Federal income tax returns, Forms 1120, were filed with respondent, as follows: Tax Year Ended
Date Filed
May 31, 1977
August 15, 1977
May 31, 1978
August 15, 1978
May 31, 1979
August 15, 1979
May 31, 1980
August 16, 1980
May 31, 1981
January 18, 1982
Paul and Suzanne jointly filed individual income tax returns with respondent, as follows: Form
Taxable Year
Date Filed
1040
1976
April 15, 1977
1040
1977
April 15, 1978
1040X
1977
April 15, 1979
1040
1978
April 15, 1979
1040
1979
April 15, 1980
1040
1980
April 15, 1981
Respondent mailed statutory notices of deficiency to petitioners involving the years in issue on April 9, 1984. At the time respondent mailed the notices on deficiency, the normal 3-year period for assessment under section 6501(a) had expired for all taxable years except corporation's taxable year ended May 31, 1981, and Paul and Suzanne's taxable year 1980. At the time respondent mailed the notices of deficiency, the 6-year period for assessment, permitted under certain circumstances by section 6501(e), was available for all taxable years, except corporation's taxable year ended *16 May 31, 1977, and Paul and Suzanne's taxable year 1976. [7]
During March 1981, respondent began a criminal income tax investigation of petitioners. An administrative summons [8] was served upon Paul on May 27, 1981, and on June 3, 1981, respondent's special agents met with Paul and his attorney, Robert Rice (Rice). Rice advised his client's corporation's employees and accountants not to turn over any of petitioners' records to respondent's agent. Respondent sought enforcement of administrative summonses served on Paul and corporation's employees in the United States District Court, Southern District of Illinois, and compliance [9] was ordered on October 16, 1981. On October 20, 1981, pursuant to a district court's order, Paul and Rice appeared at respondent's office and provided some of the summoned records. At that time Paul and Rice advised respondent's agents that most of the records had been destroyed in a fire. Although respondent did obtain petitioners' bank records and their accountants' workpapers, respondent *17 never had access to the majority of petitioners' books or records. On October 20, 1981, corporation's employees, who were also represented by Rice, did not provide the information sought in their summonses. On August 17, 1980, a fire consumed property and caused damage in a storage room located on corporation's premises. Paul has stated that all records, other than ledger sheets and payroll records, were destroyed. When interviewed on October 17, 1980, by an insurance adjuster, Paul did not mention that any books and records had been destroyed by the fire. Firefighters and arson investigators found no evidence [10] of damaged or destroyed records during or after the fire. Petitioners' business records were not destroyed in the August 17, 1980, fire. *18 Corporation used the accrual methodof accounting for tax and book purposes during the years in issue. The receipts of corporation were to be accounted for in the following manner: (1) Dining room and disco cash sales were to be "rung up" on a cash register; and (2) dining and banquet credit sales were to be reported to the bookkeepers by means of the "charge slips" or "guest checks." A uniform system of guest checks was not used and on occasion a banquet check was prepared on a matchbook cover or napkin. Paul instructed employees not to ring up cash disco sales. Banquet receipts were given to Paul, and there was no system of verification to show that all banquet or cash sales came to the attention of the bookkeepers. The banquet sales represented a large portion of corporation's business. Corporation's sales, cost of goods sold and percentage of cost of goods sold to sales, as reported on its Federal income tax returns for the taxable years ended May 31, 1977 through May 31, 1981, are as follows: Taxable Year
Cost of
% Cost to
Ended May 31
Sales
Goods Sold
Sales
1977
$ 1,182,375
$ 505,353
42.7405 1978
1,218,686
494,485
40.57525
1979
1,452,031
481,893
33.18751
1980
1,352,813
561,325
41.49317
1981
1,182,288
571,088
48.30362
*19 On its income tax returns for the taxable years ended May 31, 1977 through May 31, 1981, corporation's "total" gross income was reported, as follows: Taxable Year Ended May 31
Gross Income
1977
$ 1,201,163
1978
1,231,763
1979
1,459,161
1980
1,367,285
1981
1,215,107
Federal income tax returns for corporation's May 31, 1977 through May 31, 1979, taxable years were prepared by R. C. Fietsam Company (Fietsam). Fietsam prepared the returns based upon information received from petitioners and did not audit corporation's books and records. Fietsam prepared workpapers from the records and information provided. In some instances Fietsam ran into difficulty because of Paul's practice of making out checks to creditors which were dated at the end of a period or year and were not sent to the creditor until some later date. There were also instances of checks being issued and not recorded in the check register. During 1978 and 1979, Fietsam recorded and reported to Paul that there were inadequate bookkeeping and recordkeeping procedures that should be corrected to "improve the accounting records." For the taxable year ended May 31, 1979, Fietsam refused to release *20 the business statements because "the gross profit was 15% below normal." Fietsam also pointed out to Paul that there were personal transactions reflected in the corporate records and checking account. Federal income tax returns for corporation's May 31, 1980, and May 31, 1981, taxable years were prepared, from records provided by petitioners, by Harold Hamann and Richard J. Breslin, who did not conduct an audit for those taxable years. Although corporation's policy was to deposit sales receipts into the corporate bank account, receipts were occasionally deposited into Paul's personal bank account. In the process of calculating corporation's gross sales for its taxable year ended May 31, 1979, two adjusting entries were made by Fietsam reducing total sales by $ 88,085. One entry involved a $ 73,499.91 [11] duplication and the other involved removing 15 percent of banquet sales ($ 14,585) which were represented to be tips or gratuities for employees. The $ 73,499.91 adjusting entry reducing sales was correct and the $ 14,585 adjusting entry was incorrect because employees did not receive the 15-percent amount added to banquet checks and reflected as gratuities. *21 Petitioners did not produce adequate books and records from which corporation's reported income could be verified by respondent. Respondent, in his notice of deficiency, reconstructed corporation's gross sales by selecting the year with the lowest ratio of cost of goods sold to sales (put another way, with the largest gross profit percentage). Several adjustments were made to the sales figures including disallowing the $ 88,085 adjusting entries that Fietsam had made. After the $ 88,085 reduction, the ratio of cost of goods sold to sales decreased from the 33.18751 percent reported to 31.28745 percent. Respondent, in the notice of deficiency, then applied corporation's best adjusted gross profit rate to the other 4 taxable years to determine the amount of unreported sales in each year. After trial, respondent conceded that the $ 73,499.91 adjusting entry, for the May 31, 1979, "base year" was correct and that the ratio of cost of goods sold to sales should have been 32.86 percent ($ 481,893 divided by $ 1,466,616). Respondent's concession would result in the following reconstructed sales and differences from the amounts reported for corporation: Taxable Year
Reconstructed
Sales Reported
Ended May 31
Sales
On Return
Difference
1977
$ 1,537,897
$ 1,182,375
$ 355,522
1978
1,504,823
1,218,686
286,137
1979
1,466,616
1,452,031
14,585
1980
1,708,232
1,352,813
355,419
1981
1,737,943
1,182,288
555,655
*22 On various occasions corporation's sales were reported or reflected to third party organizations in amounts exceeding the amounts reported to respondent. In a December 2, 1976, submission to Dun and Bradstreet, Inc., corporation's annual sales were reported to be $ 2,000,000. In a February 27, 1978, submission to Dun and Bradstreet, Inc., corporation's sales were reported to have increased over the past 6 months. In 1978, at Paul's direction, an appraisal [12] of corporation was prepared by Martin Appraisal Company based upon information provided by Paul. Included within the appraisal materials was a pro forma statement of estimated income and expenses which reflected net sales for the banquet and restaurant of $ 1,250,000 with a 61.60-percent gross profit of $ 770,000. The estimated income of the disco reflected net sales of $ 855,000 with a 84.80 percent gross profit of $ 725,000. The combined net sales amounted to $ 2,105,000 with a 71.02 gross profit of $ 1,495,000. Correspondingly, the combined cost of goods sold was 28.98 percent of net sales. On their joint Federal *23 income tax returns Paul and Suzanne reported the following amounts of gross income: Taxable Year
Reported Gross Income
1976
$ 34,149.18
1977
44,550.08
1978
43,325.00
1979
41,324.18
1980
40,509.57
Respondent, in the notice of deficiency, determined that Paul and/or Suzanne were skimming and converting for their own use the unreported income respondent determined by means of a reconstruction method for corporation. Based upon an apportionment, which accounted for the difference in the taxable years of corporation and the individual petitioners, respondent determined the following amounts of additional income to Paul and Suzanne: Amount of Additional
Taxable Year
Income Determined
1976
$ 207,469
1977
315,032
1978
127,669
1979
213,483
1980
472,269
During the years 1978 through 1981, Paul prepared or had prepared for him various financial statements, some of which were signed, which reflected the following personal assets, liabilities and net worth: Document Date
Assets
Liabilities
Net Worth
June 22, 1978
$  1,161,846
$   284,000
$    877,846
1978
3,378,848
1,173,000
2,205,848
March 1, 1979
3,250,000
1980
7,034,700
1,403,000
5,631,700
December 1, 1980
39,085,000
9,400,000
29,685,000
1981
6,449,000
1,093,000
5,356,000
February 1, 1981
7,591,000
1,143,000
6,448,000
*24 In addition to respondent's reconstructed income determinations, respondent disallowed numerous deductions and credits of petitioners. The disallowance was for lack of substantiation. Based upon the record and the parties' briefs, [13] we find that petitioners [14] have substantiated or are otherwise entitled to the following items disallowed by respondent in the notices of deficiency: Augustine's Inc. - Docket No. 24323-84
Taxable Year [15] Ended May 31
Item
1977
1978
1979
1980
1981
Interest Exp.
$ 29,808
$ 26,943
$ 62,555
$ 89,410
$ 78,157
Legal & Accting.
5,700
5,975
6,100
Music & Enter.
23,070
2,945
Bank Ser. Charge
2,249
24,164
10,424
*25 OPINION The central focus in these consolidated cases concerns a procedural battle between the parties over the propriety of respondent's determination of unreported income by a method of reconstruction. If we find that respondent was not entitled to use a reconstruction method or that the reconstruction method was flawed, respondent would be barred from assessing most of the deficiencies determined by him, because of the absence of a 25-percent omission from gross income necessary to trigger the 6-year period for assessment. If, on the other hand, we find that respondent was entitled to reconstruct income and used a proper method the assessment period would be open with respect to corporation. We must then determine whether Paul and Suzanne converted the unreported income for their own use. The individual petitioners' taxable years would also be open for assessment, if we so find. For taxable years in which the notice of deficiency was mailed more than 3 years after the filing of the petitioners' return, respondent bears the burden of showing that the 6-year period for assessment *26 under section 6501(e) is available. Rule 142(a); Farmers Feed Co. v. Commissioner,10 B.T.A. 1069 (1928). Petitioners bear the burden of proof with respect to all remaining issues. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners have raised the procedural issue that the notices of deficiency are "arbitrary and capricious." Although petitioners have not verbalized it, the effect of their argument would be that respondent would have the burden of going forward with the evidence because the determination in the notice of deficiency would lose its presumption of correctness. See Jackson v. Commissioner,73 T.C. 394, 403 (1979); Weimerskirch v. Commissioner,596 F.2d 358, 361 (9th Cir. 1979). By contending that the notices are arbitrary, petitioners are essentially asking us to look behind the notice of deficiency to examine the evidence used by respondent in making his determination. Riland v. Commissioner,79 T.C. 185, 201 (1982); Jackson v. Commissioner, supra at 400; Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974); *27 Weimerskirch v. Commissioner, supra.We have looked behind the notice, for instance, in those rare instances where respondent relied upon a "'naked' assessment without any foundation whatsoever." United States v. Janis,428 U.S. 433, 441 (1976); Jackson v. Commissioner, supra at 401. In Weimerskirch v. Commissioner, supra and Dellacroce v. Commissioner,83 T.C. 269 (1984), the Court went behind the notice because the government possessed no evidence linking the taxpayers to the illegal income. For example, in Dellacroce, we held the notice of deficiency to be arbitrary because the reconstruction of income did not link the taxpayer to the income generating activity. In this case, by contrast, and assuming that the so-called naked assessment rule applies, there is ample evidence that corporation's income was not fully reported. Employees of petitioners testified that they were told not to "ring up" all receipts. On brief, petitioners did not argue that these employees were not telling the truth, but attempted to minimize the effect of their testimony by quantifying it in relation to *28 the whole. Respondent has shown a clear and direct linkage to sources of unreported income in this case. See Adamson v. Commissioner,745 F.2d 541 (9th Cir. 1984). We next consider an allied procedural-type issue concerning respondent's use of a reconstruction method. It is a well-established principle in tax law that respondent may utilize methods of reconstructing taxpayer's income. Holland v. United States,348 U.S. 121 (1954). Respondent is entitled to use a reconstruction method in among other cases where a taxpayer has no books and records or inadequate books and records. Holland v. United States, supra;United States v. Johnson,319 U.S. 503 (1943); Campbell v. Guetersloh,287 F.2d 878, 880 (5th Cir. 1961); Adamson v. Commissioner, supra;Keogh v. Commissioner,713 F.2d 496 (9th Cir. 1983); United States v. Stonehill,702 F.2d 1288 (9th Cir. 1983). Petitioners here argue that their records were destroyed by a fire. We have found that the fire *29 did not destroy the records. Clearly, petitioners did have records which they resisted submitting to respondent, even after the records had been subpoenaed. [16] Petitioner's testimony on this point was not credible. In any event, petitioners' lack of records, whether intentional or involuntary, is a sufficient basis for respondent's use of a method of reconstruction. This, coupled with respondent's showing that there was a source of unreported income, leaves the burden of going forward as well as the ultimate burden of proving respondent's determination to be in error squarely upon petitioners. Welch v. Helvering, supra; Rule 142(a). Petitioners also argued that respondent did come into possession of all of their accountant's workpapers and that respondent was in a position to verify their returns. We see no need to address this position because the workpapers are clearly not petitioners' books of original entry and petitioners' accountant, with limited exceptions, [17] did not verify or audit the information provided by petitioners. *30 Petitioners also argued that the method of reconstruction used by respondent was arbitrary. Respondent's method of reconstruction is a variation of the percentage mark-up method. Of the 5 taxable years under consideration, respondent selected the year with the lowest ratio of cost of goods sold to sales (or, stated another way, the year with the largest admitted gross profit percentage) and made adjustments [18] to sales or cost of goods sold to insure a correct base percentage. After adjustments, the profit percentages were recomputed and the resulting percentage of cost of goods sold to sales was used in the other 4 years, which resulted in increases of about 10 to 15 percent to the gross profit. The gross profit increases resulted from the increases to income or receipts. For reasons that remain unexplained, corporation's reported percentage of cost of goods sold to sales was about 33 percent in the 1979 year and substantially higher in the other 4 years. [19]
*31 Various courts have approved methods of reconstruction which project or extrapolate from a limited amount of actual experience. Examples of these reconstructions can be found in cases that involved gambling, drugs, and other illegal sources of income. See for example Gerardo v. Commissioner,552 F.2d 549 (3d Cir. 1977) and Adamson v. Commissioner, supra.In Adamson, supra at 548, the "standard" of quality in respondent's recomputation method, was described as follows: Where the government has introduced evidence linking the taxpayer to the illegal activity, the taxpayer should not be allowed to avoid paying taxes simply because he keeps incomplete records. The absence of tax records cannot automatically deprive the Commissioner of a rational foundation for the income determination. As the Fifth Circuit recognized in Webb v. C.I.R.,394 F.2d 366, 373 (5th Cir. 1968): "[T]he absence of adequate tax records does not give the Commissioner carte blanche for imposing Draconian absolutes. . . . [However,] such absence *32 does weaken any critique of the Commissioner's methodology. Arithmetic precision was originally and exclusively in [the taxpayer's] hands, and he had a statutory duty to provide it. . . . [H]aving defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails."
See also Figueiredo v. Commissioner,54 T.C. 1508 (1970), affd. without opinion (9th Cir. 1973); Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In an analogous situation, respondent took a known period of information and extrapolated it to other periods, after adjustment. This approach was approved by this Court and a circuit court. Bradford v. Commissioner,796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Petitioners in this case have not provided records or some more rational or accurate methods of reconstructing their income. Nor have they shown that respondent's *33 method is arbitrary or in error. Respondent possessed evidence that petitioners did not record all of their receipts or income; accordingly, he utilized petitioners' reported amounts to set the standard or basis for reconstruction. Petitioners have not argued or contended that the amount reported for the taxable year ended May 31, 1979, was incorrect nor have they proven that the percentage used by respondent was in error. All we are confronted with is petitioner's self-serving testimony, which is both uncorroborated by and contracdictory to the record in this case. We, accordingly, hold that respondent's reconstruction is appropriate and should be sustained as modified by respondent's concession. The increases to corporation's income determined by means of the reconstruction, were attributed to Paul and Suzanne in respondent's notice of deficiency. Paul is the sole stockholder and chief operating officer of corporation. Paul was responsible for the day-to-day operation of corporation and was given receipts and records by employees of corporation. Paul also had control and authority over the bank accounts. Paul's personal net worth statement during the years in issue reflect *34 increases of about $ 500,000 annually without a corresponding increase in Paul and Suzanne's reported income. Further, Paul and Suzanne have not offered any other plausible explanation for their published increase in net worth. Moreover, the unreported income of corporation was not included in corporation's books or bank accounts. [20] We sustain respondent's determination that Paul and Suzanne converted the unreported income of corporation for their personal use. Our findings and holdings with respect to the reconstruction and conversion of the unreported income reflect sufficient unreported gross income in all of the taxable years in issue to satisfy respondent's burden of showing a 25-percent omission of gross income. Therefore, all such taxable years fall within the 6-year statute of limitations pursuant to section 6501(e). Concerning the various deductions and credits claimed by petitioners and disallowed by respondent, we have, based upon our own review of the record, redetermined that some of corporation's deductions have been *35 substantiated and are allowable. With respect to the remainder of corporation's claimed deductions and credits and all of Paul and Suzanne's items disallowed by respondent, we were unable to find support in the record for petitioners' allegations of error in respondent's determination. Welch v. Helvering, supra; Rule 142(a). Likewise, there is no evidence in the record to support Paul and Suzanne's claimed loss from a transaction in coffee futures. Petitioners Paul and Suzanne sought to use income averaging in their 1977 taxable year. In order to compute tax liability under the income averaging method, as permitted by sections 1301, et seq., a taxpayer is required to show the correct amount of taxable income in each of the 4 base years involved in the computation. See for example Unser v. Commissioner,59 T.C. 528 (1973). Petitioners have failed to substantiate or show the correct amount of income in years which are not under consideration. The 4 years prior to 1977 would be the base years and would include 1973, 1974, 1975 and 1976. Of those base *36 years only 1976 has been scrutinized or considered in this record. Accordingly, Paul and Suzanne are not entitled to use income averaging for their 1977 taxable year. Finally, we consider whether petitioners are liable for additions to tax under section 6653(a) in all taxable years under consideration. Section 6653(a) provides for a 5-percent addition to tax where a taxpayer's underpayment is due to negligence or intentional disregard of rules and regulations. Petitioners bear the burden of showing that respondent's determination is in error. Welch v. Helvering, supra;Bixby v. Commissioner,58 T.C. 757 (1972); Rule 142(a). Petitioners have not carried their burden. Furthermore, on this record where petitioners: (1) Had inadequate books and records; (2) failed or intentionally refused to submit records to substantiate their reported income, deductions and credits; and (3) underreported their income, we think it is clear that the addition to tax applies for all the years in issue. To reflect the foregoing, Decisions will be entered under Rule 155 *37 in Docket Nos. 24323-84 and 24324-84.
Footnotes
1. These cases were consolidated for purposes of trial, briefing and opinion, by an oral motion granted Feb. 25, 1986. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. These cases involve a corporation and individuals, one of whom is the owner of the corporate stock, whose cases have been consolidated for purposes of trial, briefing and opinion. ↩
4. Respondent's notice of deficiency in docket No. 24323-84 makes references to the taxable years ended May 31, 1977 and 1979, in connection with underreporting of income and disallowance of deductions which decreased claimed losses and credit, but did not result in income tax deficiencies in the two related years. Such adjustments did have a numerical effect and relationship, however, to years in which deficiencies were determined. ↩
5. Although corporation was dissolved by the Secretary of State of Illinois on Oct. 1, 1984, its corporate status was reinstated and it has not lost its status or capacity as a petitioner in this case. ↩
6. The Illinois side of the Mississippi River, across from St. Louis, Missouri, is apparently considered the east part of the metropolitan St. Louis, Missouri, area. ↩
7. Because no deficiencies were determined for these earlier years, the unavailability of a 6-year period for assessment does not affect the outcome of this case. ↩
8. Administrative summonses were also served upon employees of corporation, numerous banks and other third parties, including petitioners' accountants. ↩
9. Reserving Paul's Fifth Amendment↩ privilege against self-incrimination. 10. The fire occurred in a relatively small portion of a large cinderblock structure with a metal roof. The fire was contained in a 100 to 150 square foot area of an area which was more than 1,500 square feet. Several firemen were at the scene and all of them testified that the damage was limited to some chairs, a limited amount of restaurant equipment and a few boxes which contained Christmas decorations. No witness, other than petitioners, could place the records at the situs of the fire damage. ↩
11. Corporation's reported income and expenses have been rounded to the nearest dollar. ↩
12. The appraisal was used for purposes of attempting to sell corporation's business for $ 3,100,000. ↩
13. The majority of the testimony and exhibits in this case address the adequacy of both the notices of deficiency and the reconstruction of corporation's income. Petitioners offered only nominal records and testimony in support of their contentions concerning disallowed deductions and credits. Petitioners' briefs and reply briefs focus only upon the position that respondent's determinations are arbitrary and capricious. Ostensibly, petitioners are directing their emphasis or attack on these aspects of the case in the hope that the notice will be found inadequate or the reconstruction insufficient to support a determination sufficient to trigger the 6-year period of assessment, thereby rendering most taxable years within the normal 3-year period for assessment. Under these circumstances we recognize that petitioners hoped that they would be successful on the primary issue and that the secondary issues would fall along with the primary one. ↩
14. Paul and Suzanne, individual petitioners, did not provide sufficient records or testimony to support the allowance of any of the unsubstantiated items disallowed by respondent in the notice of deficiency. ↩
15. Although the notice of deficiency determined deficiencies with respect to the 1978, 1980 and 1981 years, deductions and credits for the 1977 and 1979 taxable years have been put in issue because of carrybacks and carryovers of losses and credits. We, accordingly, include findings regarding items in "non-deficiency" years. ↩
16. Although we do not consider it probative, we find it curious that petitioners never resisted compliance with respondent's administrative summonses on the grounds that the records had been destroyed by fire. Their defense to compliance was the Fifth Amendment↩. 17. In those instances where the accountants verified the amounts by means of third party information or were able to testify of their own knowledge about the amounts, the deductions claimed and disallowed were permitted in our findings. Examples of these items include corporation's interest deductions and the accounting fees claimed. ↩
18. Respondent admiitted an error in and adjusted his computation, in that the increases to income were too high because of the percentages computed after reduction for a 1979 taxable year reversing entry in the amount of $ 73,499.91. ↩
19. 1977 - 42.7 percent, 1978 - 40.6 percent, 1980 - 41.5 percent and 1981 - 48.3 percent. ↩
20. Petitioners' accountant prepared the returns in evidence from information provided by petitioners, petitioners' books and bank records. ↩