ROY D. MARTINEZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martinez v. Commissioner
Docket No. 34278-87
United States Tax Court
T.C. Memo 1992-144; 1992 Tax Ct. Memo LEXIS 192; 63 T.C.M. (CCH) 2337; T.C.M. (RIA) 92144; March 11, 1992, Filed *192 Decision will be entered under Rule 155. Petitioner owned and operated a gas station, a liquor store, and a ranch as a sole proprietor during 1973, 1974, and 1975. Petitioner maintained books and records in the ordinary course of business. 1. Held: Petitioner's income for 1973, 1974, and 1975 was underreported. Amounts determined. 2. Held, further, petitioner must recapture investment credits under sec. 47(a) (1), I.R.C. 1954, for 1973, 1974, and 1975; burden of proof. 3. Held, further, petitioner is liable for self-employment taxes under sec. 1401, I.R.C. 1954, for 1973 and 1975; burden of proof. 4. Held, further, petitioner failed to file his 1973 and 1975 tax returns on time; his failure to file timely was not due to reasonable cause. Petitioner is liable for additions to tax under sec. 6651(a) (1), I.R.C. 1954, for 1973 and 1975. 5. Held, further, petitioner is liable for additions to tax under sec. 6653(a), I.R.C. 1954, for 1973, 1974, and 1975. 6. Held, further, petitioner is liable for additions to tax under sec. 6654(a), I.R.C. 1954, for 1973 and 1975; burden of proof. Roy D. Martinez, pro se. William *193 P. Boulet, Jr., for respondent. CHABOT
CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income taxes and additions to tax under sections 6651(a)(1)[1] (failure to file timely return), 6653(a) (negligence, etc.), and 6654(a) (underpayment of estimated tax) as follows: Additions to Tax
Year [1]
Deficiency
Sec. 6651(a) (1)
Sec. 6653(a)
Sec. 6654(a)
1973
$ 9,897.04 [2]
$ 2,359.26
$ 494.85
$ 298.39
1974
116.44
--
5.82
--
1975
9,214.45 [3]
2,192.92
460.73
373.57
*194 After concessions by respondent, the issues for decision are as follows: 1. Whether petitioner's books and records for the gas station, liquor store, and ranch clearly reflect income for 1973, 1974, and 1975; 2. Whether respondent correctly reconstructed petitioner's taxable income for 1973, 1974, and 1975; 3. Whether, and to what extent, petitioner is required to recapture investment credits for 1973, 1974, and 1975; 4. Whether petitioner is liable for self-employment taxes under section 1401 for 1973 and 1975; 5. Whether petitioner is liable for additions to tax under section 6651(a) (1) for 1973 and 1975; 6. Whether petitioner is liable for additions to tax under section 6653(a) for 1973, 1974, and 1975; and 7. Whether petitioner is liable for additions to tax under section 6654(a) for 1973 and 1975.
FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner resided in Colorado. During the years in issue, petitioner owned and operated a gas station, a liquor store, and a ranch as a sole proprietor. Petitioner *195 maintained expense journals with respect to his gas station, liquor store, and ranch for 1973, 1974, and 1975. Petitioner maintained sales journals with respect to his gas station and liquor store for 1973, 1974, and 1975. The sales journals did not include information as to any receipts from petitioner's ranch for these years. These sales journals were prepared on an accrual basis. The sales journals balanced; i.e., they were internally consistent. During 1973, 1974, and 1975 petitioner maintained bank accounts at Alamosa National Bank, Columbia Savings, and San Luis Valley Federal Savings & Loan. The total cash received and bank deposits as recorded in petitioner's sales journals and the total bank deposits (with adjustments for year-end carryover) as stipulated by the parties for 1973, 1974, and 1975 are as shown in table 1. Table 1 Cash Received
Bank Deposits
Stipulated Total
Year
per Sales Journal
per Sales Journal
Bank Deposits
1973
$ 220,247.89
$ 269,179.14
$ 273,540.00
1974
234,311.07
228,787.02
296,596.59
1975
246,968.92
278,626.17
346,666.42
Total
$ 701,527.88
$ 776,592.33
$ 916,803.01
Petitioner redeposited checks into petitioner's *196 accounts after checks were returned because of insufficient funds to pay the checks, for 1973 in the amount of $ 3,315.48, for 1974 in the amount of $ 3,164.94, and for 1975 in the amount of $ 3,360.01. Petitioner was convicted on June 6, 1980, of violating section 7203, willfully failing to file a Federal individual income tax return for 1973. He was sentenced to 1 year in prison, with confinement for 2 months and the execution of the remainder of the sentence suspended, and probation for 3 years. He was discharged from probation on September 21, 1982. Petitioner filed Federal income tax returns for 1973, 1974, and 1975 on August 10, 1982. On these tax returns, petitioner presented information as to his liquor store and gas station operations on Schedule C and as to his ranch operation on Schedule F. Some of this information is set forth in table 2. Table 2 Cost of
Year
Business
Gross Receipts
Goods Sold
Deductions
Net (Loss)
1973
Liquor & Gas
$ 208,756
$ 179,228
$ 41,545
($ 12,017)
Ranch
-0-  -- 24,255
(24,255)
1974
Liquor & Gas
235,809
203,534
46,573
(14,298)
Ranch
-0-  -- 17,655
(17,655)
1975
Liquor & Gas 263,549
233,162
45,117
(14,730)
Ranch
-0-  -- 18,545
(18,545)
*197 Each of these tax returns shows that the liquor store and gas station information is presented on the basis of the cash method of accounting. Each of these tax returns shows income from other sources, and tax payments and withholding, in the amounts set forth in table 3. Table 3 Year
Income
Tax Payment
Type
Amount
Type
Amount
1973
Wages, etc.
$ 3,423
W/held
$    460
Interest
139
Estimated
13,823
1974
Wages, etc.
3,500
W/held
446
Interest
290
1975
Wages, etc.
3,500
W/held
443
Interest
299
The amounts the parties have stipulated as the total bank deposits for 1973, 1974, and 1975 are the same amounts as respondent had determined in the notice of deficiency. Respondent then reduced the stipulated bank deposits as shown in table 4. Table 4 Item
1973
1974
1975
Stipulated bank deposits
$ 273,540.00 $ 296,596.59 $ 346,666.42 Less:
- Loans deposited
(9,996.00)
(9,895.00)
(25,000.00)
- Transfers
-0-   (6,308.13)
(6,000.00)
- Net wages received
(2,258.30)
(2,189.70)
(2,642.40)
- Interest income
(138.65)
(289.55)
(299.04)
- Sale of property
(493.42)
(4,058.16)
(3,836.53)
- Other
-0-   (10.16)
-0-   Taxable bank deposits
$ 260,653.63 $ 273,845.89 $ 308,888.45 *198 In the notice of deficiency, respondent further adjusted taxable bank deposits on account of petitioner's farm and business expenses, and certain miscellaneous items, as shown in table 5. Table 5
Item
1973
1974
1975
Taxable bank deposits
$ 260,653.63 $ 273,845.89 $ 308,888.45 Add currency withdrawn
for personal use
2,400.00 2,400.00 2,400.00 Add non-cash receipts
-0-    807.21 -0-    Add currency expended
for capital items
-0-    216.00 -0-    Accounts receivable
accrual adjustment
(1,310.22)
(2,966.22)
10,589.74 Gross sales
$ 261,743.41 $ 274,302.88 $ 321,878.19 Less:
- Cost of goods sold
(172,438.35)
(211,172.04)
(233,688.34)
- Depreciation
(7,967.00)
(8,969.00)
(8,038.00)
- Interest expense
(3,516.22)
(3,237.68)
(3,649.89)
- Other expenses
(46,882.67)
(53,314.08)
(48,582.30)
Net profit per audit
30,939.17 (2,389.92)
27,919.57 Add losses per return
36,272.00 31,953.00 33,275.00 Total adjustments
$ 67,211.17 $ 29,563.08 $ 61,194.57 The records that petitioner maintained for 1973, 1974, and 1975 were inadequate to establish the amount of gross income earned by petitioner and required to be reported *199 on petitioner's tax returns. Petitioner failed to file his 1973, 1974, and 1975 tax returns on time. This failure with regard to each tax return extended for at least 5 months and was due to negligence and not to reasonable cause. Petitioner had underpayments of tax for 1973, 1974, and 1975; some part of the underpayment for each of these years was due to petitioner's negligence. OPINION I. Taxable Income
A. Adequacy of Books and Records
Petitioner contends that respondent was not justified in using the bank deposits method to calculate petitioner's income because petitioner's records are adequate and complete. Respondent argues that respondent was justified in using the bank deposits method to calculate petitioner's income because petitioner's books are inadequate and erroneous and do not clearly reflect income. Respondent contends that petitioner's records fail to account for some of the income from petitioner's three businesses. We agree with respondent. Respondent's determinations as to matters of fact in the notice of deficiency are presumed to be correct, and petitioner has the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 115 (1933); *200 Anson v. Commissioner, 328 F.2d 703, 706 (10th Cir. 1964), affg. Bassett v. Commissioner, T.C. Memo. 1963-10; Rule 142(a). Gross income includes gross income derived from business. Sec. 61(a) (2). Every person subject to income tax is required to keep books and records that establish the amount of gross income and deductions shown by that person on that person's income tax return. Sec. 6001; [2]section 1.6001-1(a), Income Tax Regs.[3] If the books and records are regularly kept in the course of the taxpayer's business, then they will not be disregarded absent a showing that they are inadequate or erroneous. Lark Sales Company v. Commissioner, 437 F.2d 1067, 1078 (7th Cir. 1970), affg. in part and revg. in part Medd v. Commissioner, T.C. Memo. 1968-244; Estate of Hill v. Commissioner, 59 T.C. 846, 857 (1973). *201 However, respondent is not bound to accept a taxpayer's books and records at face value; the books and records may be more consistent than truthful. Holland v. United States, 348 U.S. 121, 132 (1954). Respondent has the duty to investigate any circumstances which lead her to believe a taxpayer has taxable income larger than reported on the tax return. Campbell v. Guetersloh, 287 F.2d 878, 880 (5th Cir. 1961). Even when the taxpayer keeps books and records that support the tax return as filed, the bank deposits method is appropriate to determine whether taxable income has been omitted. Id. An inquiry outside of the books is necessary, because the books may support the tax returns as filed, yet omit taxable income. Id. Respondent's methods or theories to test her belief that unreported income exists are not restricted; she may take the taxpayer's testimony and third parties' testimony, she may examine and subpoena traders' and brokers' accounts and books, she may examine property tax records and deeds, and she may examine the bank accounts of the taxpayer. Id.
It is well established that bank deposits are prima facie evidence *202 of income where the deposits were made by the party charged with income or to an account controlled by the party charged with income. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see Erickson v. Commissioner, 937 F.2d 1548, 1551-1552 (10th Cir. 1991), affg. T.C. Memo. 1989-552. At trial, petitioner conceded that his ranch income was omitted from the sales journals. In petitioner's post-trial briefs, he concedes that he "has additional taxable income from unidentified sources" as shown in table 6. Table 6 Petitioner's
Petitioner's
Year
Opening Brief
Answering Brief
1973
$ 14,683.80
$  33,779.65
1974
15,059.39
24,849.18
1975
21,369.87
53,460.68
Totals
$ 51,113.06
$ 112,089.51
By petitioner's own admission, at trial and in his post-trial briefs, he acknowledges that his books are incomplete in that they omit substantial amounts of income. Petitioner does not contend that his books and records omit deductible expenses that would offset the omitted income. Accordingly, petitioner acknowledges on opening brief that his business books *203 and records understate his business income by an amount equal to about 7 percent of the gross receipts he reported on his tax returns. On answering brief, petitioner concedes that his business books and records understate his business income by an amount equal to about 16 percent of the gross receipts he reported on his tax returns. (Compare supra table 6 to table 2.) In addition, petitioner's sales journals for the 3 years in issue show that his aggregate bank deposits from his business activities exceeded by about $ 75,000 his aggregate cash receipts from his business activities. See supra table 1. Also, these sales journals show that petitioner's aggregate bank deposits from his business activities exceeded by about $ 68,000 the aggregate gross receipts reported on petitioner's tax returns for the 3 years in issue. See supra tables 1 and 2. The foregoing is by itself sufficient to obligate petitioner to explain the differences that are apparent merely from an inspection of petitioner's own sales journals and tax returns. There is more. The aggregate bank deposits the parties have stipulated to for the 3 years in issue exceeds by some $ 140,000 the aggregate *204 bank deposits shown in petitioner's sales journals. See supra table 1. Petitioner's stipulated bank deposits equal the amounts determined by respondent in the notice of deficiency. Compare supra tables 1 and 4. We conclude that petitioner's books and records are not adequate and complete, and that respondent was justified in using the bank deposits method to calculate petitioner's income. B. Amount of Unreported Income
Petitioner argues that his omitted income subject to tax should be determined from the deposit analysis he prepared rather than the bank deposits method. Respondent contends that petitioner's omitted income subject to tax should be determined from the bank deposits method and that petitioner has failed to carry his burden of proof as to either income or expenses. We agree largely with respondent. Petitioner has the burden of proof, in general ( Welch v. Helvering, 290 U.S. 111, 115 (1933)), and particularly with regard to bank deposits. Marcello v. Commissioner, 380 F.2d 494, 496-497 (5th Cir. 1967), affg. on this point T.C. Memo. 1964-302; Tokarski v. Commissioner, 87 T.C. at 76-77. *205 We have examined each category of adjustments that respondent made in the notice of deficiency in moving from bank deposits (subsequently stipulated to by the parties) to net adjustments, as set forth supra in tables 4 and 5. We have compared these items to petitioner's tax returns, books, or schedules, whichever was applicable. As to each of the items, petitioner has failed to show that the adjustment to bank deposits should be more favorable (i.e., a greater subtraction or a smaller addition) than the amount used by respondent. Indeed, as to many of the items, respondent's adjustments either match what was shown in petitioner's materials or are more favorable than what was shown in petitioner's materials. The one change that we make to respondent's adjustments is a category that does not appear in the notice of deficiency -- redeposited checks. We are satisfied that petitioner did redeposit some checks from his businesses that were returned from the bank for insufficient funds. In examining the aggregate deposits, the deposits must be reduced by the amount of the checks that were redeposited, as the second time the checks were deposited it would create a duplication in *206 the amount of the bank deposits. The only evidence of the amount of the redeposited checks is presented in a cash analysis by petitioner. Petitioner's cash receipts and sales analysis shows redeposited checks for 1973 in the amount of $ 3,315.48, [4] for 1974 in the amount of $ 3,164.94, and for 1975 in the amount of $ 3,360.01. Respondent does not specifically dispute these amounts, and in fact acknowledges that there were redeposited checks. Petitioner's amounts of redeposited checks do not seem excessive considering the high dollar volume of business in which petitioner was engaged. *207 Respondent asserts on answering brief that she "has allowed expenses to petitioner for all redeposits of checks returned for insufficient funds, as reflected in Exhibits 15-O, 16-P, and 17-Q." Firstly, it may be that respondent misunderstands the problem. The cited exhibits are stipulated to as "analyses of petitioner's cancelled checks and bank charges". Our concern on this point is with the checks petitioner received, deposited, and then redeposited into his bank account, and not with the checks petitioner drew on his bank account. Thus the cited exhibits do not deal with the question of double-counting in deposits. Secondly, respondent offers no explanation as to why an amount for redeposited checks should be taken into account as an expense rather than as a reduction of gross receipts. We have not been made aware of any expense which, under ordinary accounting methods, would arise from merely redepositing bounced checks into the bank account. Thus, we conclude that respondent did not adjust the bank deposit totals to account for redeposited checks. We conclude that it is more likely than not that petitioner did redeposit checks into his bank account in the amounts *208 stated in his cash receipts and sales analysis. Thus, we allow a reduction from the total bank deposits for redeposited checks in the amounts listed in petitioner's cash receipts and sales analysis. We hold for respondent on this issue, except for the redeposited checks adjustment, as to which we hold for petitioner. II. Investment Credit Recapture
Section 47(a)(1)[5] requires a taxpayer to recapture investment credit if the taxpayer disposes of, or ceases to use, investment credit property before the end of the useful life which had been used to calculate the credit in an earlier year. In general, the amount to be recaptured is the excess of (1) the credit allowed under the original useful life and (2) the credit allowable using the actual useful life of the property in the taxpayer's hands. *209 In the notice of deficiency, respondent determined petitioner must recapture investment credits for 1973 -- $ 25.69, 1974 -- $ 116.44, and 1975 -- $ 232.85, because petitioner disposed of some cattle and a pickup truck. Petitioner has failed to offer any evidence or analysis of this issue, and so petitioner fails to meet his burden of proof. We hold for respondent on this issue. III. Self-Employment Taxes
Section 1401[6] imposes a tax on the net earnings from self-employment income of every individual. *210 In the notice of deficiency, respondent determined that petitioner is liable for self-employment taxes for 1973 and 1975. See supra nn. 3 and 4. Petitioner has failed to offer any evidence or analysis of this issue, and so petitioner fails to meet his burden of proof. We hold for respondent on this issue. IV. Additions to Tax
A. Section 6651(a)(1)
Section 6651(a)(1)[7] imposes an addition to tax in case of a failure to file a timely tax return, unless it is shown that that failure is due to reasonable cause and not due to willful neglect. *211 The parties have stipulated, and we have found, that petitioner filed his tax returns for 1973 and 1975 on August 10, 1982. Plainly, this filing date is far more than 5 months later than the due dates for these tax returns. Sec. 6072(a). No suggestion is made that any extensions of time for filing could account for any meaningful part of petitioner's lateness in filing. Sec. 6081(a). No showing is offered of reasonable cause or absence of willful neglect. On the contrary, we have found that this failure was due to negligence and not to reasonable cause. We hold for respondent on this issue. [8]
*212 B. Section 6653(a)
Section 6653(a)[9] imposes an addition to tax if any part of the underpayment of tax is due to negligence or intentional disregard of rules and regulations. Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). *213 Section 6001 and section 1.6001-1(a) and (e), Income Tax Regs. (see supra nn. 5 and 6), require taxpayers to keep such permanent books of account or records as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown on their tax returns. The books and records that petitioner maintained for 1973, 1974, and 1975 were inadequate to establish the amount of gross income required to be reported on his income tax returns. Petitioner's sales journals for 1973, 1974, and 1975 do not include total sales, as evidenced by petitioner's admission that his ranch income was omitted. Petitioner's deposit analyses for 1973, 1974, and 1975 contain numerous entries that have been crossed off with new amounts written above the original entries. Petitioner's books did not enable him to recognize that the cattle and a pickup truck he sold were items as to which he had claimed investment credits, which then had to be recaptured. Petitioner's failure to keep adequate records under these circumstances constitutes negligence. See Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; *214 Zivnuska v. Commissioner, 33 T.C. 226, 239-241 (1959). This negligence resulted in substantial omissions from income (even though the omissions were less than those determined by respondent) and failures to recapture investment credits. These omissions and failures resulted in deficiencies for 1973, 1974, and 1975 which, in the instant case, are the same as underpayments for 1973, 1974, and 1975. Accordingly, we conclude that petitioner has underpayments for 1973, 1974, and 1975, and that these underpayments are due to negligence. We hold for respondent on this issue. C. Section 6654(a)
Section 6654(a)[10] imposes an addition to tax on account of the underpayment of estimated income tax by an individual. This addition to tax is computational -- that is, for the years in issue there is no good-faith or reasonable-cause exception and the addition is mandatory unless petitioner can demonstrate that he comes within one of the exceptions of section 6654(d). Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner does not claim that he falls within one of the exceptions provided for in section 6654(d). Petitioner did not *215 testify or produce any evidence at trial or contend on brief that he made estimated tax payments for his tax liability for 1973 or 1975. Petitioner's statement on his 1973 tax return that he paid $ 13,823 in estimated taxes for 1973 (see supra table 3), is not by itself sufficient to overcome respondent's contrary determination in the notice of deficiency. Thus, petitioner has failed to meet his burden of proof. *216 We hold for respondent on this issue.
In order to take account of the foregoing and concessions by respondent, Decision will be entered under Rule 155.
Footnotes
1. In the notice of deficiency, respondent also determined a deficiency and additions to tax for 1976; this was not challenged in the petition and so is not before us. O'Neil v. Commissioner, 66 T.C. 105↩ (1976); Rule 41(a). 1. Unless indicated otherwise, all subtitle, chapter, and section references are to subtitles, chapters, and sections of the Internal Revenue Code of 1954 as in effect for the years in issue. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. $ 9,306.91 of this amount is chapter 1 income tax; the remaining $ 590.13 is self-employment taxes under chapter 2.↩
3. $ 8,377.05 of this amount is chapter 1 income tax; the remaining $ 837.40 is self-employment taxes under chapter 2. ↩
2. SEC. 6001. NOTICE OF REGULATIONS REQUIRING RECORDS, STATEMENTS, AND SPECIAL RETURNS. Every person liable for any tax imposed by this title [title 26, the Internal Revenue Code of 1954], or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary or his delegate may from time to time prescribe. Whenever in the judgment of the Secretary or his delegate it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary or his delegate deems sufficient to show whether or not such person is liable for tax under this title. [The subsequent amendments of this provision (by sec. 1906(b) (13) (A) [sic] of the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1520, 1834) by sec. 501(a) of the Revenue Act of 1978 (Pub. L. 95-600, 92 Stat. 2763, 2878) and by sec. 314(d) of the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324, 605)) do not affect the instant case.] ↩
3. SEC. 1.6001-1 Records. (a) In general. Except as provided in paragraph (b) of this section [relating to farmers and wage-earners], any person subject to tax under subtitle A of the Code [relating to income taxes], or any person required to file a return of information with respect to income, shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information. [The subsequent amendment of this provision by 43 Fed. Reg. 59537↩ (Dec. 20, 1978), does not affect the instant case.]
4. In the exhibit referred to (39), petitioner presented a month-by-month analysis for 1973, with a redeposits total of $ 3,315.48. In another exhibit (21), petitioner presented a month-by-month analysis for 1973, with a redeposits total of $ 3,783.49. The difference between the two totals results from an additional $ 468.01 for February in Exhibit 21. Because (1) Exhibit 21 also shows $ 468.01 for February as "Unrecorded Deposits/Bk Corrections" and (2) petitioner has not sought to justify the additional $ 468.01, we have found that the redeposits for 1973 are $ 3,315.48 -- the amount presented by petitioner in Exhibit 39, his later-introduced exhibit.↩
5. SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY. (a) General Rule. -- Under regulations prescribed by the Secretary or his delegate -- (1) Early disposition, etc. -- If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.
[The subsequent amendment of this provision by sec. 1906(b)(13)(A) [sic] of the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1520, 1834) does not affect the instant case. The substance of sec. 47(a)(1)↩ now appears as sec. 50(a)(1)(A), as a result of sec. 11813(a) of the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, 104 Stat. 1388, 1388-536.]
6. Section 1401 provides, in pertinent part, as follows:
SEC. 1401. RATE OF TAX. (a) Old-Age, Survivors, and Disability Insurance. -- In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax as follows: * * * (b) Hospital Insurance. -- In addition to the tax imposed by the preceding subsection, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax as follows: * * * [The subsequent amendments of this provision by sec. 1901(a)(154)(A) of the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1520, 1789), by sec. 101(a)(3) of the Social Security Amendments of 1977 (Pub. L. 95-216, 91 Stat. 1509, 1511), and by sec. 124(a) of the Social Security Amendments of 1983 (Pub. L. 98-21, 97 Stat. 65, 89) do not affect the instant case.]↩
7. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax. -- In case of failure -- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is not for more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; ↩
8. Petitioner was convicted of willfully failing to file his 1973 income tax return "at the time * * * required by law". Sec. 7203. This crime, by the terms of the statute, is complete when the tax-filing deadline has passed. Accordingly, petitioner's conviction collaterally estops him from denying that he willfully failed to file his 1973 tax return "on the date prescribed therefor", which would make him liable for a 5-percent addition to tax under section 6651(a)(1)↩. Because of our holding and finding, it is not necessary to determine whether petitioner is collaterally estopped to deny liability for the full 25-percent addition to tax for 1973.
9. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes. -- If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. [The subsequent amendments of this provision by sec. 101(f)(8) of the Crude Oil Windfall Profit Tax Act of 1980 (Pub. L. 96-223, 94 Stat. 229, 253), by sec. 722(b)(1) of the Economic Recovery Tax Act of 1981 (Pub. L. 97-34, 95 Stat. 172, 342), by sec. 107(a)(3) of the Technical Corrections Act of 1982 (Pub. L. 97-448, 96 Stat. 2365, 2391), by secs. 1503(a) and 1503(d)(1) of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085, 2742-2743), and by sec. 1015(b) of the Technical and Miscellaneous Revenue Act of 1988 (Pub. L. 100-647, 102 Stat. 3342, 3568), do not affect the instant case.] [As a result of sec. 7721(a) and 7721(c)(1) of the Omnibus Budget Reconciliation Act of 1989 (Pub. L. 101-239, 103 Stat. 2106, 2395, 2399), the revised negligence, etc., addition to tax now appears in sec. 6662, Internal Revenue Code of 1986↩.]
10. Section 6654(a) provides, in pertinent part, as follows: SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. -- In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 and the tax under chapter 2 for the taxable year an amount determined at the rate of 6 percent per annum * * *. [The foregoing is the text of sec. 6654 as applicable to 1973. Sec. 7(c) of the so-called "Pins and Needles Act" (Pub. L. 93-625, 88 Stat. 2108, 2115) struck out "the rate of 6 percent per annum" and inserted in lieu thereof "an annual rate established under section 6621". That change applied to 1975. Sec. 7(e), 88 Stat. 2119. Petitioner does not challenge the rates used by respondent in the calculations in the notice of deficiency.] [The subsequent amendments of this provision by sec. 411 of the Deficit Reduction Act of 1984 (Pub. L. 98-369, 98 Stat. 494, 788), by sec. 1511(c)(14) of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085, 2745) do not affect the instant case.]↩